**FINLEY OILWELL SERVICE, INC., Appellant,**

v.

**RETAMCO OPERATING, INC., Appellee.**

No. 04–06–00346–CV.

Court of Appeals of Texas, San Antonio.

Oct. 17, 2007.

Jeff Small, Law Office of Jeff Small, John M. Castillo, Ray B. Jeffrey, Stumpf Craddock Massey & Farrimond, P.C., San Antonio, TX, for appellant.

James L. Drought, Calhoun Bobbitt, Drought, Drought & Bobbitt, L.L.P., San Antonio, TX, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from sanctions against appellant, Finley Oilwell, Inc. ("Finley"), which resulted in striking Finley's answer

and counterclaim and the entry of a final default judgment awarding appellee, Retamco Operating, Inc. ("Retamco"), actual damages, exemplary damages, and attorney's fees. We affirm the trial court's sanctions against Retamco; however, because the record contains legally insufficient evidence to support the award of actual damages, we reverse and remand for a new hearing on unliquidated damages.

## BACKGROUND

In the underlying lawsuit, Retamco sued Finley, as well as Paradigm Oil, Inc.; Pacific Operators, Inc.; and Pacific Operators of Texas, Inc. (collectively, "Paradigm") and others. Retamco alleged causes of action for breach of contract, fraud, and fraudulent concealment relating to a 1984 Purchase Agreement to which Retamco's predecessor ("Original ROI") was a party.[1] Retamco later severed its claims against Paradigm from those against Finley and other defendants.

During the course of the proceedings against Finley, Retamco served Finley with a request for disclosure. When Finley failed to respond, Retamco filed a motion to compel, which the trial court granted on February 4, 2000. On September 21, 2000, Retamco served Finley with its first request for production of documents. When Finley objected to all of the requests, Retamco filed a motion to compel production. Retamco also sought to depose a Finley representative, but Finley filed a motion to quash, which was denied. Then, in December 2001, Retamco served Finley with its first request for admissions. Although Finley responded to the request for admissions, Retamco considered Finley's responses to be inadequate, and it filed a motion for deemed admissions or to compel responsive answers. A second attempt to depose a Finley representative resulted in another motion to quash, which was again denied.

In August 2003, Retamco filed a new motion to compel Finley to respond to its first request for production of documents. On September 25, 2003, the trial court granted the motion, overruling Finley's objections and ordering Finley "to respond without objections" to Retamco's request for production. The trial court also ordered Finley to pay Retamco $1,000 in attorney's fees.

In September 2004, Retamco noticed the depositions of other parties and non-party witnesses. Finley moved to quash the depositions. The trial court granted the motion in part and denied the motion in part. Despite being ordered to designate witnesses for deposition, Finley did not appear at the deposition, and Retamco filed a motion to compel. Following a hearing on the motion to compel, the trial court signed an order entitled "Finley's Last Chance Order," which was dated February 25, 2005. In this order, the trial court found that Retamco had "been attempting to schedule Finley's deposition since September 21, 2000 and since that time has issued eight Notices to take Finley's deposition, and that Finley has resisted attempts to be deposed." The court ordered Finley to designate individuals to appear on its behalf. Although the court denied Retamco's request for attorney's fees, the court ended its order by stating:

> The Court further ORDERS that if Finley does not appear for its deposition as scheduled with a representative fully

---

1. Further background on this litigation may be found in this court's opinions in *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, No. 04–06–00108–CV, 2007 WL 2427993 (Tex.App.- San Antonio August 29, 2007, no pet. h.) ("the *Paradigm* appeal") and *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531 (Tex.App.-San Antonio 2004, pet. denied).

knowledgeable to testify about the matters set forth in the deposition notice and pay the ordered attorney's fees [of $1,000 pursuant to its September 25, 2003 order], the Court will consider an order striking Finley's answer and entering a default judgment against it, and an order holding Finley's responsible representative in contempt of court.

On March 3, 2005, Finley designated Clement Alberts for deposition. At the deposition, Alberts was either unable or unwilling to testify on at least nine separate topics listed in Retamco's deposition notice and he did not produce all of the requested documents. On March 8, 2005, Retamco gave Finley until March 18, 2005 to designate another witness. Finley did not respond. Frustrated by Finley's repeated failure to respond to discovery requests, Retamco filed a motion for sanctions.

By letter dated July 21, 2005, the trial court withheld an immediate ruling on the motion for sanctions and provided Finley with another opportunity to comply. On October 20, 2005, the trial court conducted a sanctions hearing after which it issued its order on November 10, 2005. In this order, the trial court found that (1) Finley had not provided Retamco with the information it requested in the March 8, 2005 Alberts deposition; and (2) since the court's July 21, 2005 letter, Finley had not produced any further information to Retamco by way of interrogatory responses, supplemental deposition responses, supplemental responses to request for production or supplemental responses to request for admissions. The trial court noted Finley's past failure to cooperate in discovery, its various attempts to quash or delay depositions, Alberts's inability to testify on at least nine topics listed in the deposition notice, and Finley's failure to respond to Retamco's request to designate another witness by March 18, 2005. The court concluded:

7. The foregoing demonstrates an egregious and flagrant pattern of discovery abuse by Finley. It has ignored discovery requests, ignored court orders, and ignored deposition notices.

8. The abusive failure to respond to discovery by Finley has substantially frustrated [Retamco's] preparation of its case. The discovery abuse has primarily been the fault of Finely, not its counsel.

9. These sanctions are justified. Finley's hindrance of the discovery process justifies a presumption that its defenses lack merit. There is a direct relationship between the offensive conduct and the sanction imposed, because the frustrated discovery has been tailored and directed to discovering the facts alleged to result in Finley's liability. Finley is in a position to furnish the discovery required in this case, but instead has deliberately hindered discovery. The discovery abuse has been persistent and calculated. Previous court orders have been disobeyed.....

Based on its conclusions, the trial court (1) ordered Finley to pay Retamco's attorney's fees in the amount of $25,000; (2) overruled Finley's objections to Retamco's interrogatories, request for production and request for admissions, and ordered further objections waived; (3) ordered that Finley could not rely on Texas Rules of Civil Procedure 197.2(c) and 192.4 in responding to Retamco's interrogatories, request for production, or request for admissions; and (4) ordered Finley to provide amended answers to Retamco's interrogatories and to produce all documents under its possession, control or custody identified in Retamco's deposition notice. Finally, the court set a hearing for November 30, 2005 "to determine if Finley has complied

with this order and to determine if additional sanctions are appropriate." Following the November 30, 2005 hearing, the trial court provided Finley with an additional thirty days to comply with its November 10, 2005 order.

Another hearing was held on December 29, 2005, at which time the court considered Retamco's motion for default judgment, which was based on Finley's failure to pay either the $1,000 or $25,000 attorney's fees. Retamco also asked that Finley's answer be stricken. The court did not rule on the motion. However, another evidentiary hearing was held on January 17, 2006, at which time the trial court considered Finley's compliance with the November 10, 2005 order. Following this hearing, the trial court signed a Default Judgment Against Finley, in which the court struck Finley's answer and counterclaim, precluded Finley from opposing Retamco's causes of action and claims for damages and attorney's fees, and granted Retamco's motion for default judgment. The court set a hearing for February 10, 2006 to consider Retamco's claims for actual and exemplary damages and attorney's fees. Following the February 10, 2006 hearing, the trial court signed a Final Judgment Against Finley, awarding Retamco $5,656,409 in actual damages, $10,000,000 in exemplary damages, and attorney's fees and interest. The trial court severed the Finley judgment from the remaining defendants. This appeal by Finley ensued.

## STANDING

Finley first asserts Retamco has no standing to sue because Retamco was not a party to the 1984 agreement; Retamco never acquired Original ROI's real property interests by assignment or formal statutory articles of merger; Retamco was not acting in a representative capacity for Original ROI; and no statute grants Retamco standing. Retamco counters that its standing to sue is established by the record. On appeal, Finley relies on the arguments made by Paradigm in the *Paradigm* appeal. As in the *Paradigm* case, Retamco's petition was admitted into evidence at the damages hearing here. Also as in the *Paradigm* case, Retamco's petition alleged that "[o]n or about June 14, 1984, *Plaintiff,* Retamco Operating, Inc. ("ROI") entered into a Purchase Agreement with PNB Securities Corp. ("PNB") . . . ." [Emphasis added.] For the reasons stated in this court's opinion in the *Paradigm* appeal, we hold that Retamco's standing was established by the record and the trial court had subject-matter jurisdiction. *See Paradigm,* 2007 WL 2427993, *2–3.

## DEATH PENALTY SANCTIONS

In its second issue, Finley asserts the trial court erred in assessing death penalty sanctions. We review the trial court's imposition of sanctions for discovery abuse under an abuse of discretion standard. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000). In assessing sanctions for discovery abuse, the trial court may consider everything that has occurred during the litigation. *Berry–Parks Rental Equip. Co. v. Sinsheimer,* 842 S.W.2d 754, 757 (Tex.App.-Houston [1st Dist.] 1992, no writ). When reviewing a trial court's imposition of sanctions, we view conflicts in the light most favorable to the trial court's ruling, and resolve all inferences in favor of the trial court's judgment. *Herring v. Welborn,* 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied).

The trial court has discretion to impose sanctions for discovery abuse under Texas Rule of Civil Procedure 215. Such sanctions include an order striking the pleadings, dismissing the action with or without prejudice, or rendering a default judgment, *i.e.,* "death penalty sanctions." Tex.R. Civ. P. 215.2(b)(5). A death penalty sanction "is of particular concern" because the trial court renders judgment without addressing the merits of the case. *Hamill v. Level,* 917 S.W.2d 15, 16 (Tex. 1996). Accordingly, such sanctions must be reserved for circumstances in which a party has so abused the rules of procedure, despite imposition of lesser sanctions, that the party's position can be presumed to lack merit and it would be unjust to permit the party to present the substance of that position before the court. *TransAmerican,* 811 S.W.2d at 918.

A trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes. *Cire v. Cummings,* 134 S.W.3d 835, 839 (Tex. 2004). Any sanction imposed must be "just." Tex.R. Civ. P. 215.2(b). In evaluating whether sanctions are "just," we consider (1) whether a direct relationship exists between the offensive conduct and the sanction imposed, and (2) whether the sanctions ordered are excessive to punish the improper conduct. *TransAmerican,* 811 S.W.2d at 917. With these principles in mind, we examine the "justness" of the trial court's sanctions in this case.

## 1. Direct Relationship

Under the first prong of the *TransAmerican* analysis, a direct relationship exists if a trial court directs the sanction against the abuse found, the sanction remedies the prejudice caused to the innocent party, and the sanction is "visited upon the offender." *TransAmerican,* 811 S.W.2d at 917. Finley argues the trial court erred because there is no direct nexus between the death penalty sanction and Finley's alleged offensive conduct. According to Finley, the penalty does not "fit the crime" because the focus of the sanctions hearings was its failure to pay the monetary sanction, and not any perceived discovery abuse. We disagree.

In its default judgment, the trial court recited Finley's failure to comply with its orders to pay the monetary sanctions. However, the court also took notice of each of the prior sanctions hearings, including the January 17, 2006 hearing at which the court found that Finley had failed to comply with the November 10, 2005 order and the December 8, 2005 order. Specifically, the court noted Finley's failure to provide amended answers to Retamco's interrogatories; produce all documents under its possession, control or custody identified in Retamco's deposition notice by a date certain; and make a good faith effort to fully, completely, and timely answer any additional interrogatories Retamco may propound. The court also specifically found that Finley ignored written discovery requests, court orders, and deposition notices. Thus, it is evident from a review of the default judgment that the trial court considered, not only Finley's failure to pay the monetary sanctions, but also Finley's repeated refusal to comply with court orders and discovery requests.

On the issue of complying with court orders and discovery requests, Finley contends there were no employees other than Clement Alberts to designate as corporate representative and there were no other documents to produce other than those already produced. In its February 25, 2005 Last Chance Order, the trial court ordered Finley to designate a representative fully knowledgeable to testify about the matters set forth in the deposition notice. At the October 25, 2005 sanctions

hearing, Finley asserted it was Retamco's burden to "find previous owners or directors or officers that could testify." Alternatively, Finley argued that Alberts appropriately answered the questions propounded by Retamco. Retamco countered that instead of complying with the court's order to designate a representative fully knowledgeable to testify about matters set forth in the deposition notice, Finley designated Alberts who claimed knowledge of nothing prior to 2002 because he did not become president of the company until that year.

Finley also asserted it had complied with the court's order to answer interrogatories and produce documents. Finley produced 188 boxes of documents, accompanied by a list of which documents could be found in each box. In total, Finley produced almost 6,700 pages of documents. Retamco conceded it had received the documents but argued that most of the documents were unsigned copies of Paradigm's documents. As to the volume of paper produced, Retamco noted that Finley's response to a request for production was simply to point to one or more boxes in which the document could be found. For example, Retamco's attorney said that his request for "a simple document" resulted in a response from Finley to "look at 15 or 16 different boxes of documents." Another request for production received the response "see documents attached here under Bates one through 6005." This type of response clearly violated the court's November 10, 2005 order that Finley could not rely on Texas Rule of Civil Procedure 197.2(c), which provides as follows:

> If the answer to an interrogatory may be derived or ascertained from ... the responding party's business records, or from a compilation, abstract or summary of the responding party's business records, and the burden of deriving or ascertaining the answer is substantially the same for the requesting party as for the responding party, the responding party may answer the interrogatory by specifying and, if applicable, producing the records or compilation, abstract or summary of the records. The records from which the answer may be derived or ascertained must be specified in sufficient detail to permit the requesting party to locate and identify them as readily as can the responding party.....

Tex.R. Civ. P. 197.2(c).

Retamco's attorney also pointed to examples of Finley's evasive answers to Retamco's interrogatories. For example, when asked for its net worth, Finley gave no direct answer. When asked when Alberts first became president of Finley, Alberts replied, "sometime on or about 2002." Also, many of the answers were based on hearsay information, rather than actual knowledge.

Finally, on the issue of Finley's ability to pay the monetary sanctions, Finley argues it was no longer in business, had not conducted business since 2000, and had a negative net worth as of 2003 when it filed for bankruptcy. Retamco presented evidence that Finley's bankruptcy had been dismissed and the automatic stay vacated. Retamco read into evidence portions of Alberts's deposition in which Alberts, Finley's designated representative, stated he had no knowledge of Finley receiving any money in 2000 or what happened to the money. Retamco, however, also presented evidence that Finley had received over $1 million in the course of the litigation. The trial court specifically found that "Finley has received income during the pendency of this litigation far in excess of the monetary sanctions awarded, and substantially in excess of any amounts reasonably required to conduct its defense, and has conducted no business operations, in the

meantime, otherwise requiring the expenditure of such funds."

Based on its findings of discovery abuse, the trial court concluded there existed a direct relationship between Finley's offensive conduct and the sanction imposed, "because the frustrated discovery has been tailored and directed to discovering the facts alleged to result in Finley's liability. Finley is in a position to furnish the discovery required in this case, but instead has deliberately hindered discovery."

We conclude the trial court did not abuse its discretion in striking Finley's pleading because the trial court's findings of discovery abuse, both Finley's failure to pay the monetary sanctions and its failure to comply with discovery orders, are supported by the record and there exists a direct relationship between Finley's conduct and this sanction. Because Finley's conduct thwarted Retamco's efforts to establish Finley's liability, the sanction imposed here remedied the prejudice caused Retamco.

### 2. Excessive Sanctions

 Under the second prong of the *TransAmerican* analysis, sanctions must not be excessive and the trial court must have considered whether lesser sanctions were available that would have fully promoted compliance. *TransAmerican*, 811 S.W.2d at 917. Generally, before a sanction that prevents a decision on the merits is justified, lesser sanctions must first be tested to determine their efficacy. *Cire*, 134 S.W.3d at 840 (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992)). In all but the most exceptional cases, the record must reflect the trial court considered the availability of appropriate lesser sanctions and must contain an explanation of the appropriateness of the sanctions imposed. *Id.* at 842 (applying *GTE Comm'ns Sys. Corp. v. Tanner*, 856

S.W.2d 725, 729 (Tex.1993)); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex.2003).

Finley does not assert the trial court failed to consider lesser sanctions. Instead, Finley argues that preventing it from opposing Retamco's evidence on damages renders Texas Rule of Civil Procedure 243 meaningless because it allows Retamco to present inaccurate or incomplete information to the court. We disagree.

Pursuant to Rule 243, a court rendering default judgment must hear evidence of unliquidated damages, regardless of whether the default results from the defendant's failure to answer or from discovery sanctions. TEX.R. CIV. P. 243. In this case, the trial court heard evidence of unliquidated damages pursuant to Rule 243. However, Finley was precluded from contesting the damages evidence. Texas Rule of Civil Procedure 215.2(b)(4) gives the trial court discretion to render a default judgment as sanctions and to deny the offending party the right to oppose the damages evidence. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 538 (Tex.App.-San Antonio 2004, pet. denied); *see also In re Dynamic Health, Inc.*, 32 S.W.3d 876, 885 (Tex.App.-Texarkana 2000, orig. proceeding); TEX.R. CIV. P. 215.2(b)(4). Therefore, because the trial court did not abuse its discretion in denying Finley the right to oppose the damages evidence, the sanctions imposed were not excessive. *See Paradigm Oil*, 161 S.W.3d at 538.

### SUFFICIENCY OF THE EVIDENCE ON DAMAGES

 Finley next challenges the sufficiency of the evidence in support of the amount of actual damages awarded on a number of grounds, including that the evidence is legally insufficient to support the award. At the damages hearing, Retamco

presented John Thomas, a consulting petroleum landman, who testified on the issue of actual damages. Thomas stated he was retained to determine Retamco's rights and interests under the 1984 purchase agreement. To accomplish this task, he reviewed the 1984 purchase agreement, a 1993 Paradigm asset purchase agreement, the management service agreement between Paradigm and Finley, as well as county records that relate to the leases covered by the purchase agreement and other documents. According to Thomas, Retamco had the right to participate in the overriding royalty interest and working interest in any new wells drilled, and Retamco had the right to propose new wells and participate in other wells that might be proposed. Finally, he said Retamco had the right to receive notice of the termination of any lease and the right to elect to take over the lease. Thomas explained that he arrived at his conclusion that Retamco was entitled to overriding royalty and working interest payments "look[ing] at all the leases broadly in areas" where he knew there had been production, and he examined the leases "that may have been part of that production." He "came up with many, many leases that were part of the new wells that were drilled after 1984."

Thomas next stated he arrived at the percentages to which Retamco was entitled for overriding royalty payments and working interest payments under the various wells. For example, he said Retamco was entitled to a 1.33 percent overriding royalty and a 2.405 percent working interest after payout for the Washington Unit well. He then applied the overriding royalty percentage to "production from [each well], multiplied by the appropriate allocation for the price of oil and gas." He also "multipl[ied] the overriding royalty number, and then added back in the working interest number after the well had paid out." Thomas said he and Charlie Graham, a petroleum engineer, worked together to compile numbers for the pricing scenario and they discussed the cost of drilling wells, as well as the monthly operating costs. Thomas explained Graham's computer program as follows:

> Charlie has some computer programs and we use his programs to put in production numbers, to put in my percentages that Retamco was owed on each well. Put in the data he has from the national resource code, as far as pricing. And he ran a program on each well, and he kind of laid it out in spread sheet form. He also provided decline curbs and graphs showing the well's production.

Thomas explained that Graham "has methods by which he can project what a typical well in a typical field will do over time using pressures and decline rates." As a result, Graham prepared a report on expected future production (a reserve study) to which Thomas and Graham assigned revenues. Thomas said Graham "may have his own set of values that he thinks ... the revenues might be, but he also probably goes to other sources." Thomas stated he did not know the sources relied upon by Graham when Graham projected future revenues. Thomas also reviewed the operating costs of the wells primarily located in Webb County and he thought the expenses were "excessive."

Based on the above, Thomas opined Retamco was owed, through July 1, 2005, the following damages: (1) overriding royalty in the amount of $1,061,686, plus $440,325 in interest; (2) working interest in the amount of $1,688,430, plus $503,844 in interest; and (3) future revenue in the amount of $1,962,124. On appeal, Retamco asserts Thomas's conclusions do not constitute competent evidence of damages be-

cause his conclusions are unsupported by objective facts, figures, or data. We agree.

 Opinion testimony that is conclusory or speculative is "incompetent evidence" and cannot support a judgment. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004). "An expert opinion is conclusory when it offers an opinion with no factual substantiation." *United Servs. Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex. App.-Dallas 2005, no pet.). An expert must provide sufficient information about the methods and procedures used to reach his conclusion on damages. *See Paradigm*, 2007 WL 2427993, *5. Here, Thomas testified to his qualifications, experience, and about the numerous documents he reviewed, but he failed to provide the underlying facts or data in support of his conclusions. Although Thomas characterized expenses as "excessive," he did not provide evidence of the costs charged to Finley, nor did he explain why these costs were excessive. Thomas stated he and Graham compiled "numbers for the pricing scenario" and they discussed costs. He did not provide the "numbers" or explain the pricing scenario. Graham's report was not submitted into evidence, nor was any report by Thomas setting forth Thomas's opinion and how he reached that opinion. Again, for the same reasons stated in our opinion in *Paradigm*, we conclude Thomas's opinion as to actual damages was conclusory because he failed to sufficiently explain how he reached his conclusions. *Id.* *6. Therefore, we sustain Finley's no-evidence challenge to the evidence.

**2.** Because we reverse the award of actual damages, we must also reverse the award of exemplary damages and attorney's fees. Finley also asserts the trial court erred in failing to apply a settlement credit to the judgment. We do not decide whether Finley is entitled to

## CONCLUSION

We affirm the trial court's imposition of sanctions striking Finley's pleadings and denying Finley the right to oppose Retamco's damages evidence. However, because the record contains legally insufficient evidence to support the award of actual damages, we reverse the trial court's Final Judgment Against Finley, dated February 10, 2006, and remand the cause for a new hearing on unliquidated damages consistent with this opinion.[2]

the settlement credit; however, for the reasons stated in this court's opinion in the *Paradigm* appeal, we agree the trial court should consider the request for a settlement credit if presented to the court on remand. *See Paradigm*, 2007 WL 2427993, *7.