Affirmed In Part, Reversed and Remanded In Part, and Substitute
Opinion filed July 7, 2011.

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00765-CV



 

MILESTONE OPERATING, INC. AND
DSTJ, L.L.P., Appellants

V.

ExxonMobil Corporation, Appellee

 



On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 2009-16048



 

SUBSTITUTE OPINION ON REHEARING

We issued our original opinion in this case on March
15, 2011.  Thereafter, appellee ExxonMobil Corporation (“ExxonMobil”) filed a motion
for rehearing.  Appellants Milestone Operating, Inc. and DSTJ, L.L.P.
(collectively “appellants”) filed a response.  We grant ExxonMobil’s motion for
rehearing, withdraw our previous opinion, vacate our previous judgment, and
issue this substitute opinion and a new judgment.

The trial court granted default judgment in favor of
ExxonMobil and against appellants.  In four issues, appellants contend they
were entitled to a new trial because service was defective and they satisfied
the Craddock test, the evidence is insufficient to support the trial
court’s award of unliquidated damages, and the trial court erred by finding
that venue was proper in Harris County.  We affirm in part and reverse and
remand in part.

I.   Background

ExxonMobil
entered into a Farmout Agreement (“agreement”) with DSTJ, permitting DSTJ to
drill on ExxonMobil’s oil and gas leases in Jefferson County.  According to the
agreement, if DSTJ drilled a producing well, ExxonMobil would assign a portion
of the lease to DSTJ and receive an overriding royalty interest until “payout”
occurred.[1] 
DSTJ was obligated to notify ExxonMobil when “payout” occurred, at which time ExxonMobil
could elect to escalate its overriding royalty interest or convert to a working
interest.  ExxonMobil alleged that DSTJ eventually assigned its interest in the
agreement to Milestone.  

According
to ExxonMobil, appellants failed to notify ExxonMobil that “payout” occurred at
the Broussard Trust # 45 well.  ExxonMobil sued appellants for breach of
contract and declaratory and injunctive relief.  ExxonMobil contends Donald
Harlan, appellants’ director/agent/partner, was personally served with citation. 
After appellants failed to answer, ExxonMobil filed a motion for entry of a default
judgment.  ExxonMobil provided appellants ten days’ notice of the default
judgment hearing.  Appellants failed to appear on or before the date of the
hearing, and the trial court granted a default judgment in favor of ExxonMobil. 
ExxonMobil was awarded $1,474,600.26 in unliquidated damages, $243,481.12 in
prejudgment interest, $52,282.00 in attorney’s fees, and $1,228.57 in costs. 
The trial court also granted ExxonMobil declaratory and injunctive relief.[2] 
Appellants timely filed a motion for new trial.  Following an evidentiary
hearing, the trial court denied appellants’ motion.   

II.   Motion for New Trial

A.   Whether New Trial
Was Required Because of Defective Service

We begin
with appellants’ second issue in which they contend the trial court erred by
finding that appellants were properly served with citation.  Specifically, appellants
argue that Harlan was not served in person.  They also contend there is no
evidence supporting an inference that the process server, Thomas C. Barber,
verbally informed Harlan he had been sued.  

Under
Texas Rule of Civil Procedure 106, a plaintiff may serve a defendant by
delivering citation to the defendant in person.  Tex. R. Civ. P.
106(a)(1).  Appellants cite no rule requiring a process server to inform the defendant
verbally that he has been served with citation.  Instead, appellants rely on Texas
Industries, Inc. v. Sanchez, 521 S.W.2d 133 (Tex. Civ. App.—Dallas 1975), writ
ref’d n.r.e., 525 S.W.2d 870 (Tex. 1975).  In Sanchez, the defendant
was speaking on the telephone when a deputy placed an envelope containing
citation in proximity to the defendant without informing him regarding contents
of the envelope.  Id. at 135.  The court of appeals held that the
defendant was not personally served because he “was never informed that the
envelope in question contained a citation or that [the deputy] was attempting
to serve it on him.”  Id. at 135–36.

The
present case is distinguishable from Sanchez.  As discussed in more
detail infra, the record supports a finding that the process
server approached Harlan and personally delivered the citation and related
documents.  We conclude this fact satisfies the personal service requirement of
Rule 106(a)(1).  Appellants’ second issue is overruled.

B.   Whether New Trial
Is Warranted Under Craddock

We next
address appellants’ first issue in which they contend the trial court erred by
denying their motion for new trial based on the Craddock standard.

1.   Standard
of Review and Applicable Law

A trial
court’s decision to deny a motion for new trial will not be disturbed on appeal
absent an abuse of discretion.  See Strackbein v. Prewitt, 671 S.W.2d
37, 38 (Tex. 1984).  However, a trial court abuses its discretion by
failing to grant a new trial when all three Craddock requirements are
met.  See id. at 38–39; Craddock v. Sunshine Bus Lines, Inc., 134
Tex. 388, 392–93 133 S.W.2d 124, 126 (1939).  

Under Craddock, the defendant must demonstrate that (1) his
failure to appear was not intentional or the result of conscious indifference,
(2) there is a meritorious defense, and (3) granting a new trial will not
operate to cause delay or injury to the plaintiff. Craddock,
133 S.W.2d at 126.  The trial court must test the motion for new trial and
evidence against the requirements of Craddock and grant the motion if those
requirements are met.  See Strackbein, 671 S.W.2d at 39.  The historical
trend is toward liberally granting
new trials following default.  Titan
Indem. Co. v. Old S. Ins. Grp., Inc., 221 S.W.3d 703, 708 (Tex.
App.—San Antonio 2006, no pet.).  

2.   “Intentional
or Conscious Indifference” Requirement

            The
defaulting defendant satisfies the first Craddock requirement if its
factual assertions are uncontroverted and negate intent or conscious
indifference.  See Walker v. Gutierrez, 111 S.W.3d 56,
64 (Tex. 2003).  If the defendant’s factual assertions are controverted,
the trial court resolves the issue.  See Estate of Pollack v. McMurrey, 858
S.W.2d 388, 392 (Tex. 1993) (“Whether the [defendant’s] failure to answer
was intentional or the result of conscious indifference is a fact question.”). 
In determining whether the defendant’s factual assertions are controverted, we consider
the knowledge and acts of the defendant and all evidence in the record.  See
Dir., State Emps. Workers’ Comp. Div. v. Evans, 889 S.W.2d 266, 269
(Tex. 1994).  This requirement “‘is one of intentional or conscious
indifference—that the defendant knew it was sued but did not care.’”  Levine
v. Shackelford, Melton & McKinley, L.L.P., 248 S.W.3d 166, 168­–69 (Tex.
2008) (per curiam) (quoting Fidelity & Guar. Ins. Co. v. Drewery Constr.
Co., 186 S.W.3d 571, 575–76 (Tex. 2006) (per curiam)).  The defendant’s “excuse
need not be a good one to suffice.”  Fidelity, 186 S.W.3d at
575–76.  

In
support of their motion for new trial, appellants presented the affidavit and testimony
of Harlan.  In his affidavit, Harlan swore:

I was not
personally served with Plaintiff’s Original Petition or any other related
documents by Mr. Thomas Barber or anyone identifying themselves as a process
server on May 19, 2009[3]
or on any day before or thereafter.  In fact, I did not learn of Plaintiff’s
lawsuit against DSTJ and Milestone until on or about June 1, 2009.

At the motion-for-new-trial
hearing, Harlan testified he first discovered the underlying lawsuit in early
June 2009, when he was on the witness stand in an unrelated case and opposing
counsel mentioned that appellants had been sued by ExxonMobil.  This news
surprised Harlan because he believed appellants were in “discussions” with ExxonMobil. 
Harlan explained he had never “been served with a lawsuit by any process server
regarding a lawsuit from Exxon.”  He also did not “recall at any time anyone
identifying themselves as a process server, coming out to the second building
where [his] office is and knocking on [his] window,” but stated, “Of course,
that’s a long time ago.  But as far as I know, I -- I did not step out and be
approached by anybody, no.”  During cross-examination, Harlan agreed that he
did not simply forget being served and that he “never received a lawsuit from
[ExxonMobil] back on March 19th, 2009 at 2:15.”

Harlan
testified, “[I]t’s not likely that I would forget something like [having been
sued].”  He explained that appellants had been sued four times and he believed
he was the registered agent for service in those lawsuits.  When asked what he would
do if he was served, Harlan responded, “I don’t normally handle legal matters,
but I would recognize, of course, it was a legal document and turn[] it over to
our legal counsel,” and “I would let other responsible people in the office
know that I had received the document[,] [a]nd one of us would, of course, immediately
call[] our legal counsel.”  He did not “recall any of this happening at any
time in March of 2009.”  Harlan stated that he could not recall his activities
on March 19.  Moreover, when he asked others, they could not remember his
activities at 2:15 p.m. on March 19.

Barber,
the process server who allegedly served Harlan, was deceased as of the date of
the hearing on appellants’ motion for new trial.  However, ExxonMobil presented
the testimony of Barber’s fiancée, Lynn Tatar, who accompanied him to appellants’
office on March 19, 2009.  Tatar remembered that she and Barber decided to serve
appellants while they were near appellants’ office on other business. 
According to Tatar, when they arrived, they followed their usual routine in
which Tartar reviewed the documents to be served, informed Barber who was to be
served, and then handed the documents to Barber.  When Barber exited his vehicle,
Harlan approached, and Barber handed the citation to Harlan.  Tatar acknowledged
the returns-of-service presented by ExxonMobil as the documents delivered to
Harlan.  Additionally, ExxonMobil presented an email from Barber to his
supervisor that stated: “Donal [sic]
Harlan-DSTJ LL Partner Ship [sic] was served at 2:15 pm today 3/19/09.”

During
the hearing, the parties stipulated that appellants’ receptionist (1) received hand-delivery
of a sealed envelope containing ten days’ notice of the default-judgment
hearing, (2) signed a transmittal letter reflecting that the envelope contained
copies of ExxonMobil’s motion for default judgment and notice of the hearing,
and (3) told the process server that she would “get [the envelope] to where it
needed to go.”  The transmittal letter identified Harlan as the person to whom
the documents were carbon copied.  ExxonMobil indicated that the purpose of the
stipulation was “[t]o show that we complied with the Court’s order by
delivering the notice of default in the motion to the defendants ten days
before the hearing, which we did; and [the receptionist] told the process
server that she would deliver that to Mr. Harlan.”  The parties did not
stipulate that the receptionist recognized the legal significance of the
envelope or its contents.  Harlan testified that he was in Beaumont preparing
for an unrelated trial when his receptionist received the notice.[4]

Appellants
concede that Tatar’s statements controverted Harlan’s testimony that he was
never served, creating a disputed fact question that the trial court resolved
against appellants.  Nevertheless, appellants contend they established their
failure to answer was not intentional or the result of conscious indifference
because nothing in the record controverted the inference that Harlan was
unaware he had been sued.  See Walker, 111 S.W.3d at 64.  Stated
differently, appellants contend, “Harlan’s . . . inability to recall service is
. . . sufficient to negate any suggestion that [appellants] intentionally
failed to answer the Lawsuit.”  

In
support of this argument, appellants rely on Alford v. Cary, a Tyler
Court of Appeals opinion on remand from the Texas Supreme Court.  No.
12-04-00314, 2007 WL 60765 (Tex. App.—Tyler Jan. 10, 2007, pet. denied) (mem.
op.).  In that case, the trial court granted the defendant’s petition for bill
of review setting aside a default judgment.  Id. at *1.  The defendant
attached an affidavit to his petition which stated in pertinent part:

I have been served with citation in lawsuits in which
I have been sued on other occasions.  On each of these occasions, I followed
the established office procedure at Diagnostic Clinic.  That procedure involves
providing the citation to the business manager of Diagnostic Clinic who, in
return, forwards the citation to the appropriate insurance carrier.  

. . .

            .
. . I do not recall being served with citation or the Plaintiff’s Petition in
[the underlying case].  If I had realized I had been sued, I would have
followed [the] procedure outlined above.

Id.  In its original opinion, the court
of appeals explained that the defendant did not deny he was served but “merely”
stated he did not recall having been served.  Alford v. Cary, No.
12-04-00314-CV, 2005 WL 2665442, at *5 (Tex. App.—Tyler Oct. 19, 2005), rev’d,
203 S.W.3d 837 (Tex. 2005) (per curiam).  The court noted that the defendant
“[did] not show making any effort or expending any energy to retain knowledge
of the lawsuit when served with this citation,” and concluded the defendant
“failed to negate conscious indifference as the reason for his failure to
answer . . . .”  Id.  The supreme court vacated the court of appeals’s
opinion and remanded the case to allow the court of appeals to consider Fidelity,
186 S.W.3d at 575–76, in which the supreme court had “recently clarified the
[Craddock standard] when service papers are lost.”  Cary v. Alford, 203
S.W.3d at 837.[5]
 On remand, the court of appeals applied Fidelity and affirmed the
trial court’s order striking the default judgment: 

[In his
affidavit, the defendant] implied that if he had realized he was being served
with citation of a lawsuit, he would have taken the necessary steps to defend
himself in court.  His affidavit explains that he had been sued before and that
the office procedure had previously resulted in his being defended in court. 
This is enough of an excuse to negate intentional or conscious indifference.  See
Fidelity, 186 S.W.3d at 575–76.

Alford, 2007 WL 60765, at *4.  

In Fidelity,
the plaintiff served the defendant via its registered agent.  188 S.W.3d 672,
675 (Tex. App.—Tyler 2005), rev’d, 186 S.W.3d 571 (Tex. 2006).  After
the trial court granted default judgment, the defendant filed a motion for new
trial based on Craddock and attached four affidavits to the motion.  Id.
at 678.  The trial court denied the defendant’s motion for new trial.  Id.
at 675.  After determining that the affidavits were conclusory, the court
of appeals affirmed, explaining, “[T]here is no affidavit from a person who
actually handled the citation explaining how the citation was lost or where in
the chain of communication a breakdown occurred . . . .”  Id. at
678–79.  The supreme court reversed:

We disagree
that [the defendant’s] four affidavits were general or conclusory.  To the
contrary, they detail the procedures for handling service papers in general and
what is known about [the plaintiff’s] papers in particular.  In the case of the
electronic records, they explain precisely where the breakdown occurred—at data
entry by [the registered agent].

We also disagree that to
establish that papers were lost there must be an affidavit from the person who
lost them describing how it occurred.  People often do not know where or how
they lost something—that is precisely why it remains “lost.”  This Court has
often set aside default judgments when papers were misplaced, though no one
knew precisely how. 

We agree that a conclusory statement that documents were “lost” must
generally be supported by some explanation from the person most likely to have
seen them, or of the efforts made to find them.  But the Craddock
standard is one of intentional or conscious indifference—that the defendant
knew it was sued but did not care.  An excuse need not be a good one to
suffice.  

The affidavits here show neither intent nor indifference.  Instead,
they detail [the defendant’s] efforts to establish a system that would avoid
precisely what happened.  As [the plaintiff] did not controvert this proof, the
trial court was not at liberty to disregard it.

186 S.W.3d at 575–76
(citations omitted).

            Turning to
the facts of this case, we emphasize it was appellants’ burden to show that
their failure to appear was not intentional or the result of conscious indifference. 
See In re R.R., 209 S.W.3d 112, 115 (Tex. 2006).  At the
hearing on appellants’ motion for new trial, Harlan asserted the following: 
(1) he was not served, (2) he would remember if he had been served, (3) he does
not remember the events of March 19, and (4) he did not learn of the lawsuit
until June 2009.  Harlan also testified that, in the past, he forwarded lawsuit
documents to the appropriate personnel.  Although this testimony may “detail [appellants’]
procedures for handling service papers in general,” it does not indicate “what
is known about [appellants’] papers in particular.”  Fidelity, 186
S.W.3d at 575.  Instead, Harlan testified regarding his usual protocol when
sued in order to bolster his contention that he was never served with citation. 
Hence, the crux of appellants’ argument was that they were never served and
were unaware of the lawsuit before entry of the default judgment.  

This
case is analogous to Interconex, Inc. v. Ugarov, 224 S.W.3d 523 (Tex.
App.—Houston [1st Dist.] 2007, no pet.).  In Interconex, the defendant’s
agent for service testified that he had not been served (despite his signature
on the citation) and explained that he “always . . . [turns] over any legal documents
[he] received as registered agent for [the defendant] to our attorney and to
the president of the company.”  Id. at 536–37.  The First Court of
Appeals held that this testimony did not establish the defendant’s lack of
conscious indifference because “there was no testimony establishing whether
[the agent] had actually forwarded the papers in this lawsuit to the
appropriate persons . . . or what may have happened to the papers . . . .”  Id.
at 538.  The court further determined that, even if the evidence supported
an inference the agent forwarded the papers, “neither the president nor the
counsel [for the defendant] testified whether or not they had received the
papers, whether or not such papers were lost on their way to their offices,
whether or not these papers had been misplaced by representatives in their
office, and, importantly, whether or not [the defendant] failed to file an
answer to the lawsuit through a mistake or accident.”  Id. at 538–39.  The
court concluded, “Unlike the evidence presented in [Fidelity], here there
is no evidence concerning the papers in this lawsuit and there is no
explanation of where . . . ‘the breakdown occurred.’”  Id. at 539. 

            Similarly, in
this case, there was no direct or circumstantial evidence regarding whether the
service papers may have been misplaced, such as an “explanation from the person
most likely to have seen them, or of the efforts made to find them.”  Fidelity,
186 S.W.3d at 575.  Without such evidence, the trial court could only speculate
whether a “breakdown occurred.”  See id.  For example, although Harlan did
not remember the events of March 19, he testified he would have notified
responsible persons in his office and the service papers would have been sent
to counsel if he had been served.  Based on this testimony, the trial
court’s implicit finding that Harlan was served raises unanswered questions
about Harlan’s actions after he was served, such as whether he actually notified
responsible persons in his office and whether the service papers were forwarded
to counsel.  As suggested in Interconex, these questions should have
been directed to  appellants counsel and responsible persons in appellants’ office. 
If these persons answered that they never received notice regarding the
suit, and did not receive service documents, Harlan’s testimony that he was
unaware of the lawsuit before entry of the default judgment, might have raised
an inference that he misplaced the documents.  If these persons answered that
they were notified regarding the suit and received the service documents,
appellants would be required to offer further explanation for their failure to
appear.  Although the evidence does not support a finding that appellants
failed to appear as a result of conscious indifference, the evidence does not
support the contrary, and it was appellants’ burden to satisfy the Craddock
test.  Accordingly, we disagree with the holding in Alford that a
defendant’s contention it was not served, but if it had been, it would have
followed its usual procedures, without more, establishes a lack of conscious
disregard.  

Because
appellants did not satisfy the first requirement of Craddock, we need
not consider whether they satisfied the remaining requirements.  We hold the
trial court did not err by denying appellants’ motion for new trial. 
Accordingly, appellants’ first issue is overruled.

III.   Unliquidated Damages

In their
third issue, appellants contend the evidence is legally insufficient to support
the trial court’s award of unliquidated damages for breach of contract.   

When a default judgment is taken
against the defendant, all allegations of material fact set forth in the
petition are deemed admitted except the amount of unliquidated damages.  Holt
Atherton Indus. Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).  In order to
determine unliquidated damages, the trial court must hear evidence regarding
damages.  Tex. R. Civ. P. 243.  Legal sufficiency of the
evidence to support an award of unliquidated damages may
be challenged on appeal from a no-answer default judgment. Argyle Mech., Inc. v. Unigus Steel, Inc.,
156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.).  When a defendant attacks
sufficiency of the evidence to support the trial court’s
determination of damages in a default
judgment, we must review the evidence adduced in support
of the judgment.  Dawson v. Briggs, 107 S.W.3d 739, 748 (Tex. App.—Houston
[1st Dist.] 2003, no pet.).

We will sustain a legal sufficiency or “no evidence”
challenge if (1) the evidence shows a complete absence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a scintilla, or (4) the evidence establishes conclusively the
opposite of the vital fact.  City of Keller v. Wilson, 168 S.W.3d 802,
810 (Tex. 2005).  We consider the evidence in the light most favorable to the finding
and indulge every reasonable inference that supports it.  Id. at 820. 
We credit favorable evidence if a reasonable fact finder could and disregard
contrary evidence unless a reasonable fact finder could not.  Id. at
827.  The evidence is legally sufficient if it would enable reasonable and
fair-minded people to reach the finding under review.  Id.  

            In its motion
for default judgment, ExxonMobil attached the affidavit of revenue accounting
analyst, Donald B. Braun, who averred in pertinent part: 

·       
He “analyzed the revenue owed to ExxonMobil from [appellants] for
the properties operated by [appellants] in Jefferson County,” 

·       
He is “familiar with the facts in this case,” 

·       
He “calculated the amount ExxonMobil should have received as a
25% working interest owner in the Broussard Trust #45 Well,” and 

·       
“As a 25% working interest owner, as of May 18, 2009, ExxonMobil
is entitled to the amount of $1,474,600.26 as well as interest on that amount,
as calculated under Sections 91.402 and 91.403 of the Texas Natural Resources
Code, which is $243,481.12 for a total of $1,718,081.38.”

Appellants
contend Braun’s assertions are wholly conclusory and insufficient to support
the damages award because Braun failed to indicate (1) the date on which
appellants should have begun paying ExxonMobil pursuant to a twenty-five
percent working interest, (2) what his analysis entailed, (3) how he determined
the production volumes of the well and percent of condensate produced, (4) the monthly
sales prices of the oil/gas and condensate, (5) interest burdens, taxes due,
and monthly operating expenses, and (6) whether his calculations included
consideration of the twenty-five percent overriding royalty interest appellants
were obligated to pay.  

Citing Texas
Commerce Bank, National Association v. New, 3 S.W.3d 515 (Tex. 1999), Exxon
Mobile argues that the Texas Supreme Court held conclusory affidavits are sufficient
to support an award of unliquidated damages in a default judgment.  In New,
Texas Commerce presented the affidavits of one bank officer who “explained the
details of the check-kiting scheme . . . [that resulted in] a considerable
overdraft balance” and another officer who “had reviewed pertinent bank records
and . . . [determined the] account was overdrawn in the amount of $729,510.96.” 
Id. at 517.  The court concluded:

Testimony of the total amount due under a written
instrument is legally sufficient to support an award of that amount in a
default judgment proceeding.  Texas Commerce’s bank officers’
affidavits aver personal knowledge of the facts, describe the scheme resulting
in the bank’s loss, and identify the total amount owed on the overdrawn Texas
Commerce account. The affidavits are legally sufficient to support the trial
court’s damage award. 

Id. (citations omitted).  Relying on New,
ExxonMobil contends it was not required to present “the considerable amount of
data that supports Braun’s calculation.”  

            Appellants
agree that ExxonMobil was not required to explain every variable affecting
price, but argue ExxonMobil should have “at least aver[red] to the existence of
these variables and [Braun’s] consideration of them in his calculations[;
otherwise,] there [is] no way to assure that the $1,474,600.26 in damages
alleged does not represent a gross gas and condensate production figure,
calculated at unrepresentative gas and/or condensate sale prices . . . [and accounts
for ExxonMobil’s] operational cost burdens as a working interest owner or the
significant overriding royalty interest payments for this well already made by
[appellants.]”  

            We agree with appellants.  In order to
determine the correct amount of damages in this case, the trial court must
calculate the working interest owed from oil/gas produced over a three-and-a-half-year
period.  This is markedly different from the situation in New, which
involved determination of the amount of money overdrawn in a bank account.  Braun’s
affidavit is devoid of information regarding the sales prices, variables, and
costs he used to determine ExxonMobil’s damages.  Moreover, we are unable to
determine whether Braun’s calculations include the twenty-five percent
overriding royalty interest for which appellants were responsible.  Since New,
several courts have held that conclusory evidence was insufficient to support
damages awarded in a default judgment.[6] 
Moreover, in concluding that evidence was sufficient to support damages
awarded in a default judgment, one court noted that the plaintiff specified the
amount due each period, Consolidated American Industries, Inc. v.
Greit-Amberoaks, L.P.,  No. 03-07-00173-CV, 2008 WL 5210925, at *3
(Tex. App.—Austin Dec. 12, 2008, no pet.) (mem. op.), and another court
expressed that the plaintiff considered offsets when calculating the amount
due, Hoelscher v. Ackerly Oil Co.,  No. 11-02-00276-CV, 2003 WL
761076, at *1 (Tex. App.—Eastland March 6, 2003, no pet.) (mem. op.).

            ExxonMobil argues that the averments in Braun’s
affidavit are only part of the evidence supporting the trial court’s damages
award and directs us to the allegations in its petition and petroleum
engineer’s affidavit.   However, this evidence does not support the amount of damages
awarded.  The only allegation in ExxonMobil’s petition that supports or
compliments Braun’s damages calculations is the claim that “payout” occurred in
December 2005.  Although this claim is arguably some evidence regarding the
starting period for Braun’s calculations, it does not remedy the other
deficiencies in his affidavit.  Additionally, ExxonMobil’s petroleum engineer merely
asserted that ExxonMobil would have converted to a twenty-five percent working
interest had it received notice regarding the “payout” in December 2005.

            Accordingly, we hold that the evidence was
legally insufficient to support the trial court’s damage award and sustain
appellants’ third issue.

IV.   Venue

In their
fourth issue, appellants contend the trial court erred by implicitly finding
venue was proper in Harris County.  According to appellants, venue was
mandatory in Jefferson County where the subject oil and gas lease was located. 
See Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (West 2002) (governing
mandatory venue in cases involving real property).  Because we affirm part of
the trial court’s default judgment, we conclude appellants waived any right to
complain about venue.  We overrule appellants’ fourth issue.

V.  
Motion for Rehearing

In its motion for rehearing,
ExxonMobil requests that we clarify whether we reversed paragraphs 10 and 11 of
the default judgment.  Paragraphs 10 and 11 were written by the trial court as
follows:

10.       [Appellants] drilled a well called the Broussard Trust #45
Well which was completed in the Farmout Area, but failed to notify ExxonMobil
of Payout of the Broussard Trust #45 Well, which reached Payout in December of
2005.

11.       Had [appellants] promptly notified ExxonMobil that the
Broussard Trust #45 Well had reached Payout, ExxonMobil would have exercised
its option to convert its 25% overriding royalty to a 25% working interest
within the 45 days provided in the Farmout Agreement.

In its petition, ExxonMobil alleged
that payout occurred in December 2005.  Thus, we affirm the trial court’s
finding in paragraph 10 because this allegation was deemed admitted when
default judgment was rendered.  Holt Atherton, 835 S.W.2d at 83
(recognizing that when default judgment is rendered, allegations of material
fact set forth in petition are deemed admitted except amount of unliquidated
damages).

Regarding
paragraph 11, a major component of ExxonMobil’s unliquidated damages turns on
whether it would have exercised its option to convert to a twenty-five percent
working interest.[7] 
However, appellants did not challenge sufficiency of the evidence supporting
paragraph 11.[8] 
Furthermore, insufficiency of evidence supporting the amount of damages awarded
by the trial court does not affect the court’s finding that ExxonMobil would
have converted to a working interest had it received timely notice.  See Tex.
R. App. P. 44.1(b) (“If the error affects part of, but not all, the matter in
controversy and that part is separable without unfairness to the parties, the
judgment must be reversed and a new trial ordered only as to the part affected
by the error.”).  Accordingly, we affirm the trial court’s finding in paragraph
11.

VI.  
Conclusion

In sum, we reverse that portion of
the trial court’s judgment awarding monetary damages and interest for breach of
contract and remand for a new trial on damages.  We affirm the remainder of the
judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.









[1]
According to the parties, “payout” occurs when the production from a well
equals the costs of drilling and completing the well.





[2]
In short, the trial court declared that the agreement had been terminated by
ExxonMobil.





[3]
At the motion for new trial hearing, Harlan explained that, although “May” was
referenced in his affidavit, he intended to state “March” was the month in
question.





[4]
At the hearing, both parties referred to, and apparently handed the trial
court, excerpts of the receptionist’s deposition.  However, it does not appear
that either party asked that the excerpts be admitted into evidence, and the
record does not contain these excerpts.    





[5]
The supreme court’s opinion in Fidelity was issued after the court of
appeals issued its original opinion in Alford.





[6] See Collins Fin. Servs., Inc. v. Guerrero, No.
05-07-01732-CV, 2009 WL 3032479, at *3 (Tex. App.—Dallas Sept. 24, 2009, pet.
filed) (mem. op.) (holding evidence insufficient because affidavit “merely
recites an outstanding principal balance of $6,357.44 as of February 13, 2007
and indicates the last payment was made on December 24, 2003 [and] does not set
forth the applicable interest rate or the date the outstanding balance was due
and payable”); Sembritzky v. Shanks, No. 01-07-00251-CV, 2009 WL 48234,
at *7 & n.12 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem.
op.) (distinguishing New by holding that wife’s speculation regarding
husband’s gross income was legally insufficient to support award of contractual
alimony damages; “the ‘total amount due’ under the contract cannot be determined
without evidence of [the husband’s] gross income”); Lefton v. Griffith, 136
S.W.3d 271, 276–79 (Tex. App.—San Antonio 2004, no pet.) (holding
affidavit conclusory and insufficient to support several damages awards); see
also Crown Asset Mgmt., L.L.C. v. Bogar, 264 S.W.3d 420, 423-24 (Tex.
App.—Dallas 2008, no pet.) (concluding trial court did not err by denying
plaintiff default judgment because affidavit was conclusory, contained no
information regarding what payments the defendant may have made or amount of
proceeds received from the foreclosure sale, and did not state how the affiant
acquired personal knowledge of the amount of damages); Finley Oilwell Serv.,
Inc. v. Retamco Operating, Inc., 248 S.W.3d 314, 324 (Tex. App.—San
Antonio 2007, pet. denied) (concluding, in situation where trial court struck
the defendant’s answer as a sanction, evidence was legally insufficient to
support damages awarded for owed royalty and working interests because affiant
“failed to provide the underlying facts or data in support of his conclusions
[and,] [a]lthough [affiant] characterized expenses as ‘excessive,’ he did not
provide evidence of the costs charged[,] nor did he explain why these costs
were excessive”).  





[7] ExxonMobil seeks benefit-of-the-bargain damages.  The
purpose of benefit-of-the-bargain damages is restoration of
the injured party to the economic position it would have achieved had the
contract been fully performed.  Clear Lake City Water Auth. v. Friendswood
Dev. Co., Ltd., --- S.W.3d ---,   Nos. 14-07-00404-CV, 14-08-00013-CV,
2011 WL 2150224, at *6 (Tex. App.—Houston [14th Dist.] June 2, 2011, no pet.
h.).  ExxonMobil’s benefit-of-the-bargain damages are based on the measurement
of its economic position if appellants had sent timely notice of payout, i.e.,
whether ExxonMobil would have converted to a working interest or escalated its
royalty interest is directly related to calculation of its optimum economic
position had it timely received notice of payout.  





[8]
In their reply brief, appellants argued that evidence regarding whether
ExxonMobil would have converted to a working interest concerned liability, not
damages.  Although we disagree with this argument, it demonstrates that
appellants have not challenged sufficiency of the evidence supporting paragraph
11.