TEXAS COMMERCE BANK, NATION-
AL ASSOCIATION, n/k/a Chase Bank
of Texas, National Association, Peti-
tioner,

v.

Robin NEW d/b/a River City Auto Sales
and William Pacheco d/b/a Pacheco
Motor Car Sales, Respondents.

No. 98–0744.

Supreme Court of Texas.

Sept. 9, 1999.

G. Alan Waldrop, C. W. "Rocky" Rhodes, Barbara M. Ellis, Austin, Susan P. Kravik, Dallas, for Petitioner.

William B. Gammon, William Pacheco, Austin, for Respondents.

PER CURIAM.

Texas Commerce Bank obtained a default judgment against Robin New, d/b/a River City Auto Sales, and William Pacheco, d/b/a Pacheco's Motor Car Sales. To support its motion for default judgment, Texas Commerce presented three affidavits. No oral testimony was taken at the default judgment hearing. On appeal, the court of appeals held that the affidavits, constituting hearsay, were not evidence under Rule 243 of the Texas Rules of Civil Procedure, which requires that the trial court "hear evidence" on unliquidated

damages.[1] The court of appeals further held that even if affidavits constitute evidence under Rule 243, these affidavits were not legally sufficient to support the trial court's judgment. Accordingly, the court of appeals affirmed on the issue of New and Pacheco's liability and reversed and remanded for a new trial on the issue of unliquidated damages and attorney's fees.[2]

We conclude that because unobjected-to hearsay is, as a matter of law, probative evidence, affidavits can be evidence for purposes of an unliquidated-damages hearing pursuant to Rule 243. We further conclude that the affidavits here are legally sufficient to support the trial court's judgment on both damages and attorney's fees. Consequently, we affirm the court of appeals' judgment on the issue of liability, reverse on the issue of unliquidated damages and attorney's fees, and render judgment for Texas Commerce Bank.

At the outset, Texas Commerce contends that New and Pacheco did not preserve for the court of appeals' consideration the issues of whether the affidavits constituted evidence of unliquidated damages under Rule 243 or whether the affidavits, if evidence, were legally sufficient. We assume without deciding that these issues were properly preserved.

In addressing the merits, the court of appeals correctly stated:

> It is well settled that once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages. [citations omitted][3]

Therefore, we know that New and Pacheco were partners in a check-kiting scheme that resulted in a loss to Texas Commerce. New would deposit checks into his Texas Commerce account drawn against insufficient funds in Pacheco's Norwest Bank checking account. Before the normal banking deadlines for return of items drawn on insufficient funds ran, New would write checks on the Texas Commerce account for deposit in Pacheco's Norwest account to cover the overdraft created in the Norwest account by the previous day's checks. Then Pacheco would write additional checks from the Norwest account for deposit to the Texas Commerce account to cover the overdraft that would appear in New's Texas Commerce account. This scheme had the effect of keeping a group of checks "floating" in the banking system that were not supported by real deposits. Norwest discovered this scheme and stopped payment on all checks drawn from Pacheco's Norwest account. As a result, several items New deposited in his Texas Commerce account were returned. Texas Commerce charged these items as debits on New's account, resulting in an overdraft that neither New nor Pacheco covered.

Texas Commerce filed suit against New and Pacheco for various causes of action, including fraud, breach of contract, conspiracy to defraud, and violations of the civil theft statute.[4] When New and Pacheco did not answer, Texas Commerce filed a motion for default judgment asking among other relief to be awarded damages and attorney's fees. This the trial court granted. And the court of appeals reversed in part.

■ The first issue is whether affidavits constitute evidence as required by Rule 243. That rule provides:

> If the cause of action is unliquidated or be not proved by an instrument in writing, *the court shall hear evidence as to damages* and shall render judgment therefor, unless the defendant shall demand and be entitled to a trial by jury in

---

1. Tex.R. Civ. P. 243.

2. 971 S.W.2d 711.

3. 971 S.W.2d at 713.

4. *See* Tex. Civ. Prac. & Rem.Code §§ 134.001–.005.

which case the judgment by default shall be noted, a writ of inquiry awarded, and the cause entered on the jury docket.[5] Although several courts of appeals have held that affidavits can constitute evidence of unliquidated damages,[6] the court of appeals here·held that they cannot. It concluded that Rule 802 of the Texas Rules of Evidence, the hearsay rule, prevents the use of affidavits "because the application of Rule 802 anticipates opposing counsel's and/or an opposing party's presence at the hearing to object to such inadmissible hearsay."[7] It further concluded, therefore, that a trial court does not hold "an evidentiary hearing merely by accepting the affidavits attached to [the] motion."[8]

The court of appeals is incorrect. Rule 802 says, "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."[9] Nothing in rule 802 limits its application to contested hearings. The rule is not ambiguous and requires no explication. Consequently we will give it none.[10] Because unobjected to hearsay constitutes probative evidence, it satisfies the requirement of Rule 243 that there be evidence of unliquidated damages. The trial court did not err when it considered the affidavits in rendering its default judgment.

■ The court of appeals also concluded that the affidavits here were conclusory and, therefore, not legally sufficient to support the trial court's award for unliquidated damages and attorney's fees.[11] Texas Commerce presented three affidavits at the default judgment hearing. Two of the affidavits were from Texas Commerce vice presidents, Thomas Neville and Roger Bott. Neville explained the details of the check-kiting scheme and that, as a result, the Texas Commerce account had a considerable overdraft balance. Bott stated that he had reviewed pertinent bank records and that the Texas Commerce account was overdrawn in the amount of $729,510.96.

■ Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding.[12] Texas Commerce's bank officers' affidavits aver personal knowledge of the facts, describe the scheme resulting in the bank's loss, and identify the total amount owed on the overdrawn Texas Commerce account. The affidavits are legally sufficient to support the trial court's damage award.

■ The third affidavit, from Texas Commerce legal counsel G. Alan Waldrop, was legally sufficient to support the trial court's attorney's fees award. Waldrop testified that among other things, Texas Commerce had a contract with New entitling Texas Commerce to recover its reasonable attorneys' fee. He further testified that he is a duly licensed attorney, that he was familiar with the usual and customary attorney's fees in Travis Coun-

---

5. Tex.R. Civ. P. 243 (emphasis added).

6. *See, e.g., Irlbeck v. John Deere Co.,* 714 S.W.2d 54, 57–58 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.); *K–Mart Apparel Fashions Corp. v. Ramsey,* 695 S.W.2d 243, 247 (Tex. App.—Houston [1 st Dist.] 1985, writ ref'd n.r.e.); *Naficy v. Braker,* 642 S.W.2d 282, 285 (Tex.App.—Houston [14 th Dist.] 1982, writ ref'd n.r.e.); *Angelo v. Champion Restaurant Equip. Co.,* 702 S.W.2d 209, 211 (Tex.App.—Houston [1 st Dist.] 1985), *rev'd on other grounds,* 713 S.W.2d 96 (Tex.1986).

7. 971 S.W.2d at 714.

8. *Id.*

9. Tex. Civ. R. Evid. 802; *see also Irlbeck,* 714 S.W.2d at 57–58 (concluding that Rule 802

provides for hearsay admitted without objection to support a default judgment for damages and attorney's fees).

10. *See Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994).

11. 971 S.W.2d at 714–15.

12. *See Irlbeck,* 714 S.W.2d at 57–59. *See also, e.g., 8920 Corp. v. Alief Alamo Bank,* 722 S.W.2d 718, 720 (Tex.App.—Houston [14 th Dist.] 1986, writ ref'd n.r.e.); *American 10–Minute Oil Change, Inc. v. Metropolitan Nat'l Bank–Farmers Branch,* 783 S.W.2d 598, 601 (Tex.App.—Dallas 1989, no writ).

ty, and, based on his knowledge of the services rendered to Texas Commerce on this matter, which he detailed, $30,000 was a reasonable fee for prosecuting Texas Commerce's claims. This was legally sufficient to support the trial court's judgment for attorney's fees.[13]

Accordingly, pursuant to Rule 59.1 of the Texas Rules of Appellate Procedure, the Court grants the petition for review of Texas Commerce Bank and, without hearing oral argument, affirms the court of appeals' judgment on liability, reverses the judgment on the issue of damages and attorney's fees, and remands to the trial court for entry of judgment for Texas Commerce Bank consistent with this opinion.

---

13. *See, e.g., Cap Rock Elec. Coop. v. Texas Utils. Elec. Co.,* 874 S.W.2d 92, 101–02 (Tex. App.—El Paso 1994, no writ) (uncontested affidavit establishing prima facie case for attorney's fees legally sufficient to support attorney's fees award); *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 606 (Tex.App.—Dallas 1990, no writ).