MILESTONE OPERATING, INC. and DSTJ, L.L.P., Appellants,

v.

EXXONMOBIL CORPORATION, Appellee.

No. 14–09–00765–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 7, 2011.

Jeromy D. Hughes, Harry Miles Klaff, Julianne C. Lomax, Houston, for appellants.

Dick Watt, Thomas Neal Nobles, David M. Gunn, Houston, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## SUBSTITUTE OPINION ON REHEARING

CHARLES W. SEYMORE, Justice.

We issued our original opinion in this case on March 15, 2011. Thereafter, appellee ExxonMobil Corporation ("ExxonMobil") filed a motion for rehearing. Appellants Milestone Operating, Inc. and DSTJ, L.L.P. (collectively "appellants") filed a response. We grant ExxonMobil's motion for rehearing, withdraw our previous opinion, vacate our previous judgment, and issue this substitute opinion and a new judgment.

The trial court granted default judgment in favor of ExxonMobil and against appellants. In four issues, appellants contend they were entitled to a new trial because service was defective and they satisfied the *Craddock* test, the evidence is insufficient to support the trial court's award of unliquidated damages, and the trial court erred by finding that venue was proper in Harris County. We affirm in part and reverse and remand in part.

### I. BACKGROUND

ExxonMobil entered into a Farmout Agreement ("agreement") with DSTJ, permitting DSTJ to drill on ExxonMobil's oil and gas leases in Jefferson County. According to the agreement, if DSTJ drilled a producing well, ExxonMobil would assign a portion of the lease to DSTJ and receive an overriding royalty interest until "payout" occurred.[1] DSTJ was obligated to notify ExxonMobil when "payout" occurred, at which time ExxonMobil could elect to escalate its overriding royalty interest or convert to a working interest. ExxonMobil alleged that DSTJ eventually assigned its interest in the agreement to Milestone.

According to ExxonMobil, appellants failed to notify ExxonMobil that "payout" occurred at the Broussard Trust # 45 well. ExxonMobil sued appellants for breach of contract and declaratory and injunctive relief. ExxonMobil contends Donald Harlan, appellants' director/agent/partner, was

---

1. According to the parties, "payout" occurs when the production from a well equals the costs of drilling and completing the well.

personally served with citation. After appellants failed to answer, ExxonMobil filed a motion for entry of a default judgment. ExxonMobil provided appellants ten days' notice of the default judgment hearing. Appellants failed to appear on or before the date of the hearing, and the trial court granted a default judgment in favor of ExxonMobil. ExxonMobil was awarded $1,474,600.26 in unliquidated damages, $243,481.12 in prejudgment interest, $52,282.00 in attorney's fees, and $1,228.57 in costs. The trial court also granted ExxonMobil declaratory and injunctive relief [2] Appellants timely filed a motion for new trial. Following an evidentiary hearing, the trial court denied appellants' motion.

## II. MOTION FOR NEW TRIAL

### A. Whether New Trial Was Required Because of Defective Service

■ We begin with appellants' second issue in which they contend the trial court erred by finding that appellants were properly served with citation. Specifically, appellants argue that Harlan was not served in person. They also contend there is no evidence supporting an inference that the process server, Thomas C. Barber, verbally informed Harlan he had been sued.

Under Texas Rule of Civil Procedure 106, a plaintiff may serve a defendant by delivering citation to the defendant *in person.* Tex.R. Civ. P. 106(a)(1). Appellants cite no rule requiring a process server to inform the defendant verbally that he has been served with citation. Instead, appellants rely on *Texas Industries, Inc. v. Sanchez,* 521 S.W.2d 133 (Tex.Civ.App.-Dallas 1975), *writ ref'd n.r.e.,* 525 S.W.2d 870 (Tex.1975). In *Sanchez,* the defendant was speaking on the telephone when a deputy placed an envelope containing citation in proximity to the defendant without informing him regarding contents of the envelope. *Id.* at 135. The court of appeals held that the defendant was not personally served because he "was never informed that the envelope in question contained a citation or that [the deputy] was attempting to serve it on him." *Id.* at 135–36.

The present case is distinguishable from *Sanchez.* As discussed in more detail *infra,* the record supports a finding that the process server approached Harlan and personally delivered the citation and related documents. We conclude this fact satisfies the personal service requirement of Rule 106(a)(1). Appellants' second issue is overruled.

### B. Whether New Trial Is Warranted Under *Craddock*

We next address appellants' first issue in which they contend the trial court erred by denying their motion for new trial based on the *Craddock* standard.

#### 1. Standard of Review and Applicable Law

■ A trial court's decision to deny a motion for new trial will not be disturbed on appeal absent an abuse of discretion. *See Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984). However, a trial court abuses its discretion by failing to grant a new trial when all three *Craddock* requirements are met. *See id.* at 38–39; *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 392–93, 133 S.W.2d 124, 126 (1939).

■ Under *Craddock,* the defendant must demonstrate that (1) his failure to

---

**2.** In short, the trial court declared that the agreement had been terminated by ExxonMobil.

appear was not intentional or the result of conscious indifference, (2) there is a meritorious defense, and (3) granting a new trial will not operate to cause delay or injury to the plaintiff. *Craddock,* 133 S.W.2d at 126. The trial court must test the motion for new trial and evidence against the requirements of *Craddock* and grant the motion if those requirements are met. *See Strackbein,* 671 S.W.2d at 39. The historical trend is toward liberally granting new trials following default. *Titan Indem. Co. v. Old S. Ins. Grp., Inc.,* 221 S.W.3d 703, 708 (Tex.App.-San Antonio 2006, no pet.).

### 2. "Intentional or Conscious Indifference" Requirement

 The defaulting defendant satisfies the first *Craddock* requirement if its factual assertions are uncontroverted and negate intent or conscious indifference. *See Walker v. Gutierrez,* 111 S.W.3d 56, 64 (Tex.2003). If the defendant's factual assertions are controverted, the trial court resolves the issue. *See Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 392 (Tex. 1993) ("Whether the [defendant's] failure to answer was intentional or the result of conscious indifference is a fact question."). In determining whether the defendant's factual assertions are controverted, we consider the knowledge and acts of the defendant and all evidence in the record. *See Dir., State Emps. Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 269 (Tex. 1994). This requirement " 'is one of intentional or conscious indifference—that the defendant knew it was sued but did not care.' " *Levine v. Shackelford, Melton & McKinley, L.L.P.,* 248 S.W.3d 166, 168–69 (Tex.2008) (per curiam) (quoting *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.,* 186 S.W.3d 571, 575–76 (Tex.2006) (per curiam)). The defendant's "excuse need

not be a good one to suffice." *Fidelity,* 186 S.W.3d at 575–76.

In support of their motion for new trial, appellants presented the affidavit and testimony of Harlan. In his affidavit, Harlan swore:

> I was not personally served with Plaintiff's Original Petition or any other related documents by Mr. Thomas Barber or anyone identifying themselves as a process server on May 19, 2009 [3] or on any day before or thereafter. In fact, I did not learn of Plaintiff's lawsuit against DSTJ and Milestone until on or about June 1, 2009.

At the motion-for-new-trial hearing, Harlan testified he first discovered the underlying lawsuit in early June 2009, when he was on the witness stand in an unrelated case and opposing counsel mentioned that appellants had been sued by ExxonMobil. This news surprised Harlan because he believed appellants were in "discussions" with ExxonMobil. Harlan explained he had never "been served with a lawsuit by any process server regarding a lawsuit from Exxon." He also did not "recall at any time anyone identifying themselves as a process server, coming out to the second building where [his] office is and knocking on [his] window," but stated, "Of course, that's a long time ago. But as far as I know, I—I did not step out and be approached by anybody, no." During cross-examination, Harlan agreed that he did not simply forget being served and that he "never received a lawsuit from [ExxonMobil] back on March 19th, 2009 at 2:15."

Harlan testified, "[I]t's not likely that I would forget something like [having been sued]." He explained that appellants had been sued four times and he believed he was the registered agent for service in

---

3. At the motion for new trial hearing, Harlan explained that, although "May" was refer-

enced in his affidavit, he intended to state "March" was the month in question.

those lawsuits. . When asked what he would do if he was served, Harlan responded, "I don't normally handle legal matters, but I would recognize, of course, it was a legal document and turn[ ] it over to our legal counsel," and "I would let other responsible people in the office know that I had received the document[,] [a]nd one of us would, of course, immediately call[ ] our legal counsel." He did not "recall any of this happening at any time in March of 2009." Harlan stated that he could not recall his activities on March 19. Moreover, when he asked others, they could not remember his activities at 2:15 p.m. on March 19.

Barber, the process server who allegedly served Harlan, was deceased as of the date of the hearing on appellants' motion for new trial. However, ExxonMobil presented the testimony of Barber's fiancée, Lynn Tatar, who accompanied him to appellants' office on March 19, 2009. Tatar remembered that she and Barber decided to serve appellants while they were near appellants' office on other business. According to Tatar, when they arrived, they followed their usual routine in which Tatar reviewed the documents to be served, informed Barber who was to be served, and then handed the documents to Barber. When Barber exited his vehicle, Harlan approached, and Barber handed the citation to Harlan. Tatar acknowledged the returns-of-service presented by ExxonMobil as the documents delivered to Harlan. Additionally, ExxonMobil presented an email from Barber to his supervisor that stated: "DONAL [sic] HARLAN–DSTJ LL PARTNER SHIP [sic] WAS SERVED AT 2:15 pm today 3/19/09."

During the hearing, the parties stipulated that appellants' receptionist (1) re-ceived hand-delivery of a sealed envelope containing ten days' notice of the default-judgment hearing, (2) signed a transmittal letter reflecting that the envelope contained copies of ExxonMobil's motion for default judgment and notice of the hearing, and (3) told the process server that she would "get [the envelope] to where it needed to go." The transmittal letter identified Harlan as the person to whom the documents were carbon copied. ExxonMobil indicated that the purpose of the stipulation was "[t]o show that we complied with the Court's order by delivering the notice of default in the motion to the defendants ten days before the hearing, which we did; and [the receptionist] told the process server that she would deliver that to Mr. Harlan." The parties did not stipulate that the receptionist recognized the legal significance of the envelope or its contents. Harlan testified that he was in Beaumont preparing for an unrelated trial when his receptionist received the notice.[4]

■ Appellants concede that Tatar's statements controverted Harlan's testimony that he was never served, creating a disputed fact question that the trial court resolved against appellants. Nevertheless, appellants contend they established their failure to answer was not intentional or the result of conscious indifference because nothing in the record controverted the inference that Harlan was unaware he had been sued. *See Walker*, 111 S.W.3d at 64. Stated differently, appellants contend, "Harlan's . . . inability to recall service is . . . sufficient to negate any suggestion that [appellants] intentionally failed to answer the Lawsuit."

In support of this argument, appellants rely on *Alford v. Cary*, a Tyler Court of

---

4. At the hearing, both parties referred to, and apparently handed the trial court, excerpts of the receptionist's deposition. However, it does not appear that either party asked that the excerpts be admitted into evidence, and the record does not contain these excerpts.

Appeals opinion on remand from the Texas Supreme Court. No. 12–04–00314, 2007 WL 60765 (Tex.App.-Tyler Jan. 10, 2007, pet. denied) (mem. op.). In that case, the trial court granted the defendant's petition for bill of review setting aside a default judgment. *Id.* at *1. The defendant attached an affidavit to his petition which stated in pertinent part:

> I have been served with citation in lawsuits in which I have been sued on other occasions. On each of these occasions, I followed the established office procedure at Diagnostic Clinic. That procedure involves providing the citation to the business manager of Diagnostic Clinic who, in return, forwards the citation to the appropriate insurance carrier.
>
> . . .
>
> . . . I do not recall being served with citation or the Plaintiff's Petition in [the underlying case]. If I had realized I had been sued, I would have followed [the] procedure outlined above.

*Id.* In its original opinion, the court of appeals explained that the defendant did not deny he was served but "merely" stated he did not recall having been served. *Alford v. Cary,* No. 12–04–00314–CV, 2005 WL 2665442, at *5 (Tex.App.-Tyler Oct. 19, 2005), *rev'd,* 203 S.W.3d 837 (Tex.2005) (per curiam). The court noted that the defendant "[did] not show making any effort or expending any energy to retain knowledge of the lawsuit when served with this citation," and concluded the defendant "failed to negate conscious indifference as the reason for his failure to answer. . . ." *Id.* The supreme court vacated the court of appeals's opinion and remanded the case to allow the court of appeals to consider *Fidelity,* 186 S.W.3d at 575–76, in which the supreme court had "recently clarified

the [Craddock standard] when service papers are lost." *Cary v. Alford,* 203 S.W.3d at 837.[5] On remand, the court of appeals applied *Fidelity* and affirmed the trial court's order striking the default judgment:

> [In his affidavit, the defendant] implied that if he had realized he was being served with citation of a lawsuit, he would have taken the necessary steps to defend himself in court. His affidavit explains that he had been sued before and that the office procedure had previously resulted in his being defended in court. This is enough of an excuse to negate intentional or conscious indifference. *See Fidelity,* 186 S.W.3d at 575–76.

*Alford,* 2007 WL 60765, at *4.

In *Fidelity and Guar. Ins. Co. v. Drewery Const. Co., Inc.,* the plaintiff served the defendant via its registered agent. 188 S.W.3d 672, 675 (Tex.App.-Tyler 2005), *rev'd,* 186 S.W.3d 571 (Tex.2006). After the trial court granted default judgment, the defendant filed a motion for new trial based on *Craddock* and attached four affidavits to the motion. *Id.* at 678. The trial court denied the defendant's motion for new trial. *Id.* at 675. After determining that the affidavits were conclusory, the court of appeals affirmed, explaining, "[T]here is no affidavit from a person who actually handled the citation explaining how the citation was lost or where in the chain of communication a breakdown occurred. . . ." *Id.* at 678–79. The supreme court reversed:

> We disagree that [the defendant's] four affidavits were general or conclusory. To the contrary, they detail the procedures for handling service papers in

---

5. The supreme court's opinion in *Fidelity* was issued after the court of appeals issued its original opinion in *Alford.*

general and what is known about [the plaintiff's] papers in particular. In the case of the electronic records, they explain precisely where the breakdown occurred—at data entry by [the registered agent].

We also disagree that to establish that papers were lost there must be an affidavit from the person who lost them describing how it occurred. People often do not know where or how they lost something—that is precisely why it remains "lost." This Court has often set aside default judgments when papers were misplaced, though no one knew precisely how.

We agree that a conclusory statement that documents were "lost" must generally be supported by some explanation from the person most likely to have seen them, or of the efforts made to find them. But the *Craddock* standard is one of intentional or conscious indifference—that the defendant knew it was sued but did not care. An excuse need not be a good one to suffice.

The affidavits here show neither intent nor indifference. Instead, they detail [the defendant's] efforts to establish a system that would avoid precisely what happened. As [the plaintiff] did not controvert this proof, the trial court was not at liberty to disregard it.

186 S.W.3d at 575–76 (citations omitted).

■■■ Turning to the facts of this case, we emphasize it was *appellants' burden* to show that their failure to appear was not intentional or the result of conscious indifference. *See In re R.R.*, 209 S.W.3d 112, 115 (Tex.2006). At the hearing on appellants' motion for new trial, Harlan asserted the following: (1) he was not served, (2) he would remember if he had been served, (3) he does not remember the events of March 19, and (4) he did not learn of the lawsuit until June 2009. Harlan also testi-

fied that, in the past, he forwarded lawsuit documents to the appropriate personnel. Although this testimony may "detail [appellants'] procedures for handling service papers in general," it does not indicate "what is known about [appellants'] papers in particular." *Fidelity*, 186 S.W.3d at 575. Instead, Harlan testified regarding his usual protocol when sued in order to bolster his contention that he was never served with citation. Hence, the crux of appellants' argument was that they were never served and were unaware of the lawsuit before entry of the default judgment.

This case is analogous to *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In *Interconex*, the defendant's agent for service testified that he had not been served (despite his signature on the citation) and explained that he "always ... [turns] over any legal documents [he] received as registered agent for [the defendant] to our attorney and to the president of the company." *Id.* at 536–37. The First Court of Appeals held that this testimony did not establish the defendant's lack of conscious indifference because "there was no testimony establishing whether [the agent] had actually forwarded the papers in this lawsuit to the appropriate persons ... or what may have happened to the papers...." *Id.* at 538. The court further determined that, even if the evidence supported an inference the agent forwarded the papers, "neither the president nor the counsel [for the defendant] testified whether or not they had received the papers, whether or not such papers were lost on their way to their offices, whether or not these papers had been misplaced by representatives in their office, and, importantly, whether or not [the defendant] failed to file an answer to the lawsuit through a mistake or accident." *Id.* at 538–39. The

court concluded, "Unlike the evidence presented in [*Fidelity*], here there is no evidence concerning the papers in this lawsuit and there is no explanation of where ... 'the breakdown occurred.'" *Id.* at 539.

Similarly, in this case, there was no direct or circumstantial evidence regarding whether the service papers may have been misplaced, such as an "explanation from the person most likely to have seen them, or of the efforts made to find them." *Fidelity*, 186 S.W.3d at 575. Without such evidence, the trial court could only speculate whether a "breakdown occurred." *See id.* For example, although Harlan did not remember the events of March 19, he testified he would have notified responsible persons in his office and the service papers would have been sent to counsel *if he had been served.* Based on this testimony, the trial court's implicit finding that Harlan *was served* raises unanswered questions about Harlan's actions after he was served, such as whether he actually notified responsible persons in his office and whether the service papers were forwarded to counsel. As suggested in *Interconex,* these questions should have been directed to appellants counsel and responsible persons in appellants' office. If these persons answered that they never received notice regarding the suit, and did not receive service documents, Harlan's testimony that he was unaware of the lawsuit before entry of the default judgment, might have raised an inference that he misplaced the documents. If these persons answered that they were notified regarding the suit and received the service documents, appellants would be required to offer further explanation for their failure to appear. Although the evidence does not support a finding that appellants failed to appear as a result of conscious indifference, the evidence does not support the contrary, and it was appellants' burden to satisfy the *Craddock* test. Accordingly, we disagree with

the holding in *Alford* that a defendant's contention it was not served, but if it had been, it would have followed its usual procedures, without more, establishes a lack of conscious disregard.

Because appellants did not satisfy the first requirement of *Craddock,* we need not consider whether they satisfied the remaining requirements. We hold the trial court did not err by denying appellants' motion for new trial. Accordingly, appellants' first issue is overruled.

### III. UNLIQUIDATED DAMAGES

In their third issue, appellants contend the evidence is legally insufficient to support the trial court's award of unliquidated damages for breach of contract.

When a default judgment is taken against the defendant, all allegations of material fact set forth in the petition are deemed admitted except the amount of unliquidated damages. *Holt Atherton Indus. Inc. v. Heine,* 835 S.W.2d 80, 83 (Tex. 1992). In order to determine unliquidated damages, the trial court must hear evidence regarding damages. Tex.R. Civ. P. 243. Legal sufficiency of *the* evidence to support an award of unliquidated damages may be challenged on appeal from a no-answer default judgment. *Argyle Mech., Inc. v. Unigus Steel, Inc.,* 156 S.W.3d 685, 687 (Tex.App.-Dallas 2005, no pet.). When a defendant attacks sufficiency of the evidence to support the trial court's determination of damages in a default judgment, we must review the evidence adduced in support of the judgment. *Dawson v. Briggs,* 107 S.W.3d 739, 748 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

We will sustain a legal sufficiency or "no evidence" challenge if (1) the evidence shows a complete absence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only

evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005). We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it. *Id.* at 820. We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the finding under review. *Id.*

In its motion for default judgment, ExxonMobil attached the affidavit of revenue accounting analyst, Donald B. Braun, who averred in pertinent part:

- He "analyzed the revenue owed to ExxonMobil from [appellants] for the properties operated by [appellants] in Jefferson County,"
- He is "familiar with the facts in this case,"
- He "calculated the amount ExxonMobil should have received as a 25% working interest owner in the Broussard Trust # 45 Well," and
- "As a 25% working interest owner, as of May 18, 2009, ExxonMobil is entitled to the amount of $1,474,600.26 as well as interest on that amount, as calculated under Sections 91.402 and 91.403 of the Texas Natural Resources Code, which is $243,481.12 for a total of $1,718,081.38."

Appellants contend Braun's assertions are wholly conclusory and insufficient to support the damages award because Braun failed to indicate (1) the date on which appellants should have begun paying ExxonMobil pursuant to a twenty-five percent working interest, (2) what his analysis entailed, (3) how he determined the pro-

duction volumes of the well and percent of condensate produced, (4) the monthly sales prices of the oil/gas and condensate, (5) interest burdens, taxes due, and monthly operating expenses, and (6) whether his calculations included consideration of the twenty-five percent overriding royalty interest appellants were obligated to pay.

Citing *Texas Commerce Bank, National Association v. New*, 3 S.W.3d 515 (Tex. 1999), ExxonMobil argues that the Texas Supreme Court held conclusory affidavits are sufficient to support an award of unliquidated damages in a default judgment. In *New*, Texas Commerce presented the affidavits of one bank officer who "explained the details of the check-kiting scheme ... [that resulted in] a considerable overdraft balance" and another officer who "had reviewed pertinent bank records and ... [determined the] account was overdrawn in the amount of $729,510.96." *Id.* at 517. The court concluded:

Testimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding. Texas Commerce's bank officers' affidavits aver personal knowledge of the facts, describe the scheme resulting in the bank's loss, and identify the total amount owed on the overdrawn Texas Commerce account. The affidavits are legally sufficient to support the trial court's damage award.

*Id.* (citations omitted). Relying on *New*, ExxonMobil contends it was not required to present "the considerable amount of data that supports Braun's calculation."

Appellants agree that ExxonMobil was not required to explain every variable affecting price, but argue ExxonMobil should have "at least aver[red] to the existence of these variables and [Braun's] consideration of them in his calculations[; oth-

erwise,] there [is] no way to assure that the $1,474,600.26 in damages alleged does not represent a gross gas and condensate production figure, calculated at unrepresentative gas and/or condensate sale prices ... [and accounts for ExxonMobil's] operational cost burdens as a working interest owner or the significant overriding royalty interest payments for this well already made by [appellants.]"

We agree with appellants. In order to determine the correct amount of damages in this case, the trial court must calculate the working interest owed from oil/gas produced over a three-and-a-half-year period. This is markedly different from the situation in *New*, which involved determination of the amount of money overdrawn in a bank account. Braun's affidavit is devoid of information regarding the sales prices, variables, and costs he used to determine ExxonMobil's damages. Moreover, we are unable to determine whether Braun's calculations include the twenty-five percent overriding royalty interest for which appellants were responsible. Since

*New*, several courts have held that conclusory evidence was insufficient to support damages awarded in a default judgment.[6] Moreover, in concluding that evidence *was sufficient* to support damages awarded in a default judgment, one court noted that the plaintiff specified the amount due each period, *Consolidated American Industries, Inc. v. Greit–Amberoaks, L.P.*, No. 03–07–00173–CV, 2008 WL 5210925, at *3 (Tex. App.-Austin Dec. 12, 2008, no pet.) (mem. op.), and another court expressed that the plaintiff considered offsets when calculating the amount due, *Hoelscher v. Ackerly Oil Co.*, No. 11–02–00276–CV, 2003 WL 761076, at *1 (Tex.App.-Eastland March 6, 2003, no pet.) (mem. op.).

ExxonMobil argues that the averments in Braun's affidavit are only part of the evidence supporting the trial court's damages award and directs us to the allegations in its petition and petroleum engineer's affidavit. However, this evidence does not support the amount of damages awarded. The only allegation in ExxonMobil's petition that supports or compli-

6. *See Collins Fin. Servs., Inc. v. Guerrero*, No. 05–07–01732–CV, 2009 WL 3032479, at *3 (Tex.App.-Dallas Sept. 24, 2009, pet. filed) (mem. op.) (holding evidence insufficient because affidavit "merely recites an outstanding principal balance of $6,357.44 as of February 13, 2007 and indicates the last payment was made on December 24, 2003[and] does not set forth the applicable interest rate or the date the outstanding balance was due and payable"); *Sembritzky v. Shanks*, No. 01–07–00251–CV, 2009 WL 48234, at *7 & n. 12 (Tex.App.-Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) (distinguishing *New* by holding that wife's speculation regarding husband's gross income was legally insufficient to support award of contractual alimony damages; "the 'total amount due' under the contract cannot be determined without evidence of [the husband's] gross income"); *Lefton v. Griffith*, 136 S.W.3d 271, 276–79 (Tex.App.-San Antonio 2004, no pet.) (holding affidavit conclusory and insufficient to support several damages awards); *see also Crown Asset*

*Mgmt., L.L.C. v. Bogar*, 264 S.W.3d 420, 423–24 (Tex.App.-Dallas 2008, no pet.) (concluding trial court did not err by denying plaintiff default judgment because affidavit was conclusory, contained no information regarding what payments the defendant may have made or amount of proceeds received from the foreclosure sale, and did not state how the affiant acquired personal knowledge of the amount of damages); *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 324 (Tex.App.-San Antonio 2007, pet. denied) (concluding, in situation where trial court struck the defendant's answer as a sanction, evidence was legally insufficient to support damages awarded for owed royalty and working interests because affiant "failed to provide the underlying facts or data in support of his conclusions [and,] [a]lthough [affiant] characterized expenses as 'excessive,' he did not provide evidence of the costs charged[,] nor did he explain why these costs were excessive").

ments Braun's damages calculations is the claim that "payout" occurred in December 2005. Although this claim is arguably some evidence regarding the starting period for Braun's calculations, it does not remedy the other deficiencies in his affidavit. Additionally, ExxonMobil's petroleum engineer merely asserted that ExxonMobil would have converted to a twenty-five percent working interest had it received notice regarding the "payout" in December 2005.

Accordingly, we hold that the evidence was legally insufficient to support the trial court's damage award and sustain appellants' third issue.

## IV. VENUE

In their fourth issue, appellants contend the trial court erred by implicitly finding venue was proper in Harris County. According to appellants, venue was mandatory in Jefferson County where the subject oil and gas lease was located. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.011 (West 2002) (governing mandatory venue in cases involving real property). Because we affirm part of the trial court's default judgment, we conclude appellants waived any right to complain about venue. We overrule appellants' fourth issue.

## V. MOTION FOR REHEARING

■■■ In its motion for rehearing, ExxonMobil requests that we clarify whether we reversed paragraphs 10 and 11 of the default judgment. Paragraphs 10 and 11 were written by the trial court as follows:

10. [Appellants] drilled a well called the Broussard Trust # 45 Well which was completed in the Farmout Area, but failed to notify ExxonMobil of Payout of the Broussard Trust # 45 Well, which reached Payout in December of 2005.

11. Had [appellants] promptly notified ExxonMobil that the Broussard Trust # 45 Well had reached Payout, ExxonMobil would have exercised its option to convert its 25% overriding royalty to a 25% working interest within the 45 days provided in the Farmout Agreement.

In its petition, ExxonMobil alleged that payout occurred in December 2005. Thus, we affirm the trial court's finding in paragraph 10 because this allegation was deemed admitted when default judgment was rendered. *Holt Atherton,* 835 S.W.2d at 83 (recognizing that when default judgment is rendered, allegations of material fact set forth in petition are deemed admitted except amount of unliquidated damages).

■■■ Regarding paragraph 11, a major component of ExxonMobil's unliquidated damages turns on whether it would have exercised its option to convert to a twenty-five percent working interest.[7] However, appellants did not challenge sufficiency of the evidence supporting paragraph 11.[8]

---

7. ExxonMobil seeks benefit-of-the-bargain damages. The purpose of benefit-of-the-bargain damages is restoration of the injured party to the economic position it would have achieved had the contract been fully performed. *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.,* 344 S.W.3d 514, 522 (Tex.App.-Houston [14th Dist.] 2011, no pet. h.). ExxonMobil's benefit-of-the-bargain damages are based on the measurement of its economic position if appellants had sent time-

ly notice of payout, *i.e.,* whether ExxonMobil would have converted to a working interest or escalated its royalty interest is directly related to calculation of its optimum economic position had it timely received notice of payout.

8. In their reply brief, appellants argued that evidence regarding whether ExxonMobil would have converted to a working interest concerned liability, not damages. Although we disagree with this argument, it demonstrates that appellants have not challenged

Furthermore, insufficiency of evidence supporting the amount of damages awarded by the trial court does not affect the court's finding that ExxonMobil would have converted to a working interest had it received timely notice. *See* Tex.R.App. P. 44.1(b) ("If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error."). Accordingly, we affirm the trial court's finding in paragraph 11.

## VI. CONCLUSION

In sum, we reverse that portion of the trial court's judgment awarding monetary damages and interest for breach of contract and remand for a new trial on damages. We affirm the remainder of the judgment.

sufficiency of the evidence supporting para- graph 11.