**Affirmed in Part; Reversed and Remanded in Part; and Memorandum Opinion filed January 9, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00034-CV

### RO-BT INVESTMENTS, LLP, Appellant

### V.

### LE PROPERTIES, LLC AND LE COMMERCIAL, INC., Appellees

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1013335**

## M E M O R A N D U M   O P I N I O N

Le Properties, LLC and Le Commercial, Inc. (Le) sued RO-BT Investments, LLP for breach of a property management agreement, seeking to collect a six percent commission upon the sale of the property. The trial court signed a no-answer default judgment in Le's favor, awarding $58,500 in damages and $11,700 in attorney's fees. RO-BT brought this restricted appeal. RO-BT contends the trial court's judgment should be reversed because (1) Le's petition does not adequately

allege jurisdiction; (2) Le's petition does not state a cause of action or provide fair notice of the claim involved; (3) there is no evidence of damages; and (4) attorney's fees cannot be awarded when there is no evidence of damages.

We sustain RO-BT's third and fourth issues, affirm the trial court's judgment as to liability, reverse the trial court's judgment as to damages and attorney's fees, and remand for a new trial on damages and attorney's fees.

## I. BACKGROUND

Le sued RO-BT in a County Civil Court at Law. Le alleged in its petition that Le and RO-BT signed a property management agreement commencing on November 1, 2010, by which RO-BT employed Le as "the exclusive party 'to manage, sale, lease, operate and maintain' the real property and improvements generally described as the 'Spring Cypress Center,' located at 4710 Spring Cypress Road, Spring, Harris County, Texas 77379." The petition states that "the Agreement provided for certain payments to be made" to Le, including, "'[f]or sale of the Property or any portion thereof, a commission equal to six percent (6%) of the gross sales price.'" Le alleged further in paragraphs eight through eleven:

8. By email dated April 18, 2012, Richard Ong of Defendant admitted to Kristen Nguyen of Plaintiff that Defendant was selling the Property during the week of April 23, 2012 to April 27, 2012.

9. By email dated April 20, 2012, Francois Le of the Plaintiff notified Richard Ong of Defendant of Section 4.4 of the Agreement requiring Defendant to pay Plaintiff six percent (6%) of the gross sales price. In this same email, Mr. Le notified Mr. Ong that Plaintiff intended to enforce its rights to collect the commission pursuant to the Agreement and requested a response from Mr. Ong regarding whether or not Defendant intended to honor Section 4.4 of the Property by no later than April 23, 2012. Neither Mr. Ong, nor any other party associated or otherwise affiliated with Defendant, contacted Mr. Le or any other party associated or otherwise affiliated with Plaintiff about this issue.

2

10. Plaintiff files the lawsuit against Defendant to protect its rights, as provided in the Agreement, and collect the six percent (6%) commission upon the closing and funding of the Property.

## Causes of Action

### *Breach of Contract*

11. The Agreement is a valid, enforceable agreement between Plaintiff and Defendant. Plaintiff is a proper party to sue for a breach of contract. Plaintiff has performed consistent with the terms of the Agreement. Defendant has breached the Agreement, or such a breach of the Agreement is anticipated, as Defendant is acting in a manner that is inconsistent with the unambiguous provisions of the Agreement. Defendant's breach has caused, or will cause, probable and foreseeable damages to Plaintiff.

Le requested relief in the form of "un-liquidated actual damages/economic damages," among other things.

RO-BT did not answer, and Le filed an unverified motion for default judgment. In the motion, Le alleged that no hearing was necessary because damages were liquidated, so Le was entitled to six percent of a $985,500 sales price, or $58,500 in damages. Le attached only the affidavit of its attorney, Brad Porter, who primarily addressed the issue of attorney's fees. Porter testified, "Plaintiff is entitled to, and has been awarded, Fifty-Eight Thousand Five Hundred and No/100 Dollars ($58,500) in damages."

The trial court did not hold a hearing on damages and granted the default judgment in Le's favor for $58,500 in damages and $11,700 in attorney's fees. Within six months of the judgment, RO-BT filed a timely notice of a restricted appeal. *See* Tex. R. App. P. 26.1(c); Tex. R. App. P. 30.

## II. PLEADING JURISDICTION

In its first issue, RO-BT contends that Le's petition failed to establish the trial court's jurisdiction because the petition does not indicate that the amount in

3

controversy is within the jurisdictional limits of the trial court, nor has Le alleged a ripe controversy. RO-BT cites no rule, statute, case law, or any other authority to support these contentions, and RO-BT makes several factual assertions without citation to the record. RO-BT's brief is deficient on this issue. *See* Tex. R. App. P. 38.1(i) (appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also, e.g.*, *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ("An issue not supported by authority is waived.").

Further, RO-BT failed to raise the issue in the trial court. *See Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989) ("In the absence of special exceptions or other motion, defendant waives the right to complain of such a defect if plaintiff establishes the trial court's jurisdiction before resting its case."). As we will remand this case for a new trial on Le's damages, discussed below in Part IV of this opinion, Le will have the opportunity to establish the trial court's jurisdiction and cure any pleading defect.[1]

RO-BT's first issue is overruled.

---

[1] Ordinarily, parties should have an opportunity to amend their pleadings when a jurisdictional pleading issue is raised for the first time on appeal and the petition does not affirmatively negate jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96–97 (Tex. 2012). Le's petition does not affirmatively negate jurisdiction, as it states, "Jurisdiction is also proper pursuant to the statements contained in this petition," and the amount in controversy is not identified as being outside the jurisdictional limits of the trial court. Further, we note that a controversy may ripen after filing of the petition, and a suit need not be dismissed under those circumstances. *See Perry v. Del Rio*, 66 S.W.3d 239, 251–52 (Tex. 2001).

### III. PLEADING A CAUSE OF ACTION AND FAIR NOTICE

In its second issue, RO-BT contends Le's petition fails to state a cause of action and does not provide RO-BT fair notice of the cause of action. The Texas Supreme Court has explained,

> [W]hile a petition which serves as the basis for a default judgment may be subject to special exceptions, the default judgment will be held erroneous only if (1) the petition (or other pleading of the non-defaulting party that seeks affirmative relief) does not attempt to state a cause of action that is within the jurisdiction of the court, or (2) the petition (or pleading for affirmative relief) does not give fair notice to the defendant of the claim asserted, or (3) the petition affirmatively discloses the invalidity of such claim.
>
> . . . .
>
> [A] default judgment will stand if the plaintiff has alleged a claim upon which the substantive law will give relief, and has done so with sufficient particularity to give fair notice to the defendant of the basis of his complaint, even though he has stated some element or elements in the form of legal conclusions which will need to be revised if attacked by special exceptions.

*Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988) (quotations omitted). "The purpose of the fair notice requirement is to provide the opposing party with sufficient information to enable him to prepare a defense." *Id.* at 494. Under the fair notice standard, "courts assess the sufficiency of the pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007). "[A] petition is sufficient if a cause of action may reasonably be inferred from what is specifically stated in the petition, 'even if an element of the cause of action is not specifically alleged.'" *Dodd v. Savino*, No. 14-12-00555-CV, — S.W.3d —, 2013

5

WL 5861517, at *11 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet. h.) (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).

From reviewing the petition, quoted at length above, we note that Le described the contract by date and subject matter; identified the real property subject to the agreement; identified and quoted the particular section of the agreement concerning a six percent commission for the sale of the property; identified by name persons that Le communicated with about the sale of the property and the commission; and described the subject matter of those communications giving rise to Le's concern that RO-BT was selling the property and had breached or would imminently breach the contract. Further, Le included a section titled "Causes of Action" with a subtitle "Breach of Contract," which identified the elements of the cause of action.

Based on these allegations, RO-BT had sufficient information to enable it to prepare a defense, understand the basic issues, and ascertain the type of evidence that might be relevant to the controversy. Thus, we conclude RO-BT had fair notice of the breach of contract cause of action. *See Household Fin. Corp. III v. DTND Sierra Invs.*, LLC, 2013 WL 5948899, at *6 (Tex. App.—San Antonio Nov. 6, 2013, no pet. h.) (default judgment supported by fair notice of a breach of contract claim although the petition omitted the damages element); *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834–35 (Tex. App.—Dallas 2009, no pet.) (trial court erred by not signing a default judgment because the petition gave fair notice of a breach of contract claim when it identified the parties to the original credit contract and the date credit was extended, described the defendant's credit account as "Yamaha-serviced," and stated that the plaintiff acquired the defendant's account from the original contracting party); *Myan Mgmt. Group, L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750, 754–55 (Tex. App.—Dallas

2009, no pet.) (affirming default judgment because the petition gave fair notice of a breach of contract claim when the petition stated that the parties entered into three contracts, quoted the relevant parts of the contracts, alleged that the respondent violated the contracts, and stated that the petitioner was damaged); *cf. Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 726 (Tex. 1982) (no default judgment because of a lack of fair notice of a breach of contract claim concerning defective kitchen cabinets when the petition failed to allege that the defendant contracted with the plaintiff, built the house, provided or installed the cabinets, owed a duty to the plaintiff, or warranted the cabinets); *Crown Asset Mgmt., L.L.C. v. Loring*, 294 S.W.3d 841, 843–44 (Tex. App.—Dallas 2009, pet. denied) (no default judgment because of a lack of fair notice of a breach of contract claim concerning a lien; petition alleged assignment of an account but did not provide any identifying information about the underlying contract, the collateral, or a sale of the collateral; it was "impossible to determine from the petition with whom or for what [the defendant] allegedly contracted").

RO-BT's second issue is overruled.

## IV.  DAMAGES

In its third issue, RO-BT contends that there is no evidence of damages. Le responds that RO-BT cannot obtain a new trial on damages because RO-BT failed to meet the *Craddock* test for obtaining a new trial after a default judgment.[2]

---

[2] *See, e.g.*, *Sutherland v. Spencer*, 376 S.W.3d 752, 754 (Tex. 2012) ("Under *Craddock,* a trial court is required to set aside a default judgment if (1) 'the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident'; (2) 'the motion for a new trial sets up a meritorious defense'; and (3) granting the motion 'will occasion no delay or otherwise work an injury to the plaintiff.'" (quoting *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939))).

*Craddock* established the circumstances under which a trial court "must," or is "required to," set aside a default judgment and order a new trial. *See, e.g.*, *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 309 (Tex. 2012); *Sutherland*, 376 S.W.3d at 754. A defendant's failure to meet the *Craddock* test, however, does not foreclose review of the sufficiency of the evidence of damages to support a no-answer default judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82–83, 86 (Tex. 1992) (reversing a no-answer default judgment for legally insufficient evidence of damages although the defendant failed to meet the *Craddock* test); *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 79 (Tex. App.—Corpus Christi 1992, writ denied) (reviewing sufficiency of the evidence to support the damages awarded in a no-answer default judgment although the defendant failed to meet the *Craddock* test). In a restricted appeal from a no-answer default judgment, an appellant may challenge the sufficiency of the evidence supporting the trial court's damages award. *See Whitaker v. Rose*, 218 S.W.3d 216, 221 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Jackson v. Gutierrez*, 77 S.W.3d 898, 901 (Tex. App.—Houston [14th Dist.] 2002, no pet.).[3]

Thus, RO-BT's issue concerning the sufficiency of the evidence to prove Le's damages is properly before this court. RO-BT argues that there is no

---

[3] As part of its *Craddock* argument, Le contends RO-BT admitted in its appellate brief that RO-BT's failure to file an answer was intentional, and RO-BT cannot obtain a new trial on damages under these circumstances. Even if RO-BT intentionally failed to file an answer, however, this fact would not alter our scope of review. *See Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586, 590 (Tex. 1996) ("As in an ordinary appeal, a writ of error [or restricted appeal] appellant is not required to show diligence or lack of negligence before its complaints will be heard. . . . [I]t is the *fact* of nonparticipation, not the reason for it, that determines the right to appeal by writ of error."); *see also Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (reversing and instructing the court of appeals, in a restricted appeal, to address the defendant's legal sufficiency point of error although the court of appeals correctly concluded that the defendant failed to prove lack of notice of the trial setting that led to a default judgment; "Review by writ of error affords an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case.").

evidence of Le's unliquidated damages because the trial court did not hold a hearing, Le did not attach any evidence to its motion for a default judgment, and Le's motion containing factual allegations about damages was unverified and therefore not evidence. Le contends that there is some evidence of damages found in the affidavit from its attorney, Brad Porter, who testified, "Plaintiff is entitled to, and has been awarded, Fifty-Eight Thousand Five Hundred and No/100 Dollars ($58,500) in damages."[4]

"It is well settled that once a default judgment is taken against a non-answering defendant on an unliquidated claim, all allegations of fact set forth in the petition are deemed admitted, except the amount of damages." *Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 516 (Tex. 1999). "During a default judgment proceeding, affidavit testimony will support the award of unliquidated damages if the affidavit avers personal knowledge of the facts, describes the circumstances that resulted in the loss, and identifies the total amount owed as a result." *Dodd v. Savino*, No. 14-12-00555-CV, — S.W.3d —, 2013 WL 5861517, at *12 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet. h.) (citing *New*, 3 S.W.3d at 517). But conclusory evidence of damages is no evidence of damages and will not support an award of damages in a default judgment. *McCoy v. Waller Group, LLC*, No. 05-10-01479-CV, 2012 WL 1470147, at *2 (Tex. App.—Dallas

---

[4] Le does not contend on appeal that its damages were liquidated. We note that the petition requested unliquidated damages only and did not specify the sales price of the property, so it would have been impossible to determine liquidated damages merely from the factual allegations in the petition and the written instrument. *See generally Whitaker*, 218 S.W.3d at 220 (discussing liquidated damages); *Freeman v. Leasing Assocs., Inc.*, 503 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1973, no writ) (same).

Apr. 26, 2012, no pet.) (mem. op.); *Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex. App.—San Antonio 2004, on pet.).[5]

We hold that Le failed to adduce legally sufficient evidence of damages. In particular, Porter's affidavit containing a statement about the total amount of damages, even when viewed in context of RO-BT's admissions of the allegations in Le's petition, is no evidence of damages. The affidavit testimony about damages is wholly conclusory and lacks any explanation about the circumstances surrounding the amount of damages. For example, there is no evidence about the sales price of the property, so Le provided no basis for calculating the dollar figure of Le's six percent commission.

The testimony in this case is even weaker than in *Sembritzky v. Shanks*, where the First Court of Appeals found the evidence legally insufficient to support the damages awarded in a default judgment based on an alimony contract. *See* No. 01-07-00251-CV, 2009 WL 48234, at *7 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.). The contract specified the husband would pay the wife twenty-five percent of the husband's monthly gross income or $5,000 per month, whichever was greater, for sixty months or until the total alimony paid was $5 million, whichever occurred first. *Id.* at *6. The wife testified that the husband had not provided her with any information that would show twenty-five percent of the

---

[5] S*ee also Heine*, 835 S.W.2d at 84–86 (holding evidence was legally insufficient to support lost profits damages awarded in a default judgment because although the plaintiff testified as to the total amount of lost profits and provided some explanation, the plaintiffs did not provide evidence of one complete calculation); *Milestone Operating, Inc. v. ExxonMobil Corp.*, 346 S.W.3d 101, 110–11 & n.6 (Tex. App.—Houston [14th Dist.] 2011) (holding evidence was legally insufficient to support damages awarded in a default judgment when the accountant failed to adequately explain how he reached the damages amount for a working interest in oil or gas production; noting that "several courts have held that conclusory evidence was insufficient to support damages awarded in a default judgment"; and collecting cases), *rev'd on other grounds*, 388 S.W.3d 307 (Tex. 2012) (holding that the defendant was entitled to a new trial on both liability and damages because it satisfied the *Craddock* test).

husband's gross monthly income for the applicable period was less than $5 million. *Id.* at *2. She testified further that she had no reason to believe the amount would be less than $5 million, and she asked the court to enter a judgment for $4,945,000, which comprised $5 million minus a prior judgment and payment. *Id.* The trial court signed a judgment for that amount plus attorney's fees. *Id.* By doing so, the court of appeals reasoned, the trial court "would have had to find that the evidence established that, during the time period in question, [the husband] had a total gross income of at least $20,000,000." *Id.* at *6. The court of appeals found no such evidence in the record and held that the damages award was "purely speculative and no more than a mere surmise and suspicion." *Id.* at *7. For the trial court to award twenty-five percent of the husband's income up to $5 million, therefore, the wife needed to adduce some evidence of the amount of income to which the percentage could be applied. But "[i]inferences upon inferences merely beget inferences, not evidence." *Id.*

Similarly, Le's evidence that it was entitled to a six percent commission of the sales price of the property, without Le providing any evidence about the sales price of the property, constitutes no evidence of any amount of damages. Porter's testimony that damages were equal to $58,500 is conclusory, purely speculative, and no more than a mere surmise and suspicion unless there is additional evidence concerning the factual basis for the damages award.[6]

RO-BT's third issue is sustained.

---

[6] Le alleged in its unsworn motion for default judgment the total sales price of the property, but "any statements made in an unsworn motion do not constitute evidence of probative value." *Christian Bros. Auto. Corp. v. Decicco*, No. 14-03-00997-CV, 2004 WL 1877735, at *2 (Tex. App.—Houston [14th Dist.] Aug. 24, 2004, no pet.) (mem. op.).

11

## V. ATTORNEY'S FEES

RO-BT contends that if we reverse the damages award, we must also reverse the attorney's fees award. Le does not dispute this proposition, and we agree. *See, e.g.*, *Barker v. Eckman*, 213 S.W.3d 306, 315 (Tex. 2006) (remanding for new trial on attorney's fees when damages were reduced significantly).

RO-BT's fourth issue is sustained.

## VI. CONCLUSION

Having sustained RO-BT's third and fourth issues, we affirm the trial court's judgment as to liability, reverse the trial court's judgment as to damages and attorney's fees, and remand for a new trial on damages and attorney's fees. *See, e.g.*, *Heine*, 835 S.W.2d at 86 (remanding for new trial on damages after a successful sufficiency challenge from an uncontested default judgment proceeding).

/s/        Sharon McCally
                Justice

Panel consists of Justices McCally, Busby, and Wise.